### CORAM HEALTHCARE CORPORATION

v.

### AETNA U.S. HEALTHCARE INC.

No. CIV. A. 99–3330.

United States District Court, E.D. Pennsylvania.

Nov. 16, 1999.

Walter M. Phillips, Jr., Hoyle, Morris & Kerr, Philadelphia, PA, J. Daniel Sharp, Douglas Sullivan, Samuel R. Miller, Julie M. Kennedy, Folger, Levin & Kahn, San Francisco, CA, for Plaintiff.

John M. Elliott, Frederick P. Sanatarelli, Brian J. McCormick, Jr., Mark J. Schwemler, Thomas N. Sweeney, Elliott, Reihner, Siedzikowski and Egan, for Defendant.

Barry A. Furman, Kaplin, Stewart, Meloff, Reiter and Stein, P.C., for Movants.

Walter M. Phillips, Jr., Hoyle, Morris & Kerr, Philadelphia, PA, for Coram Healthcare Corp.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff Coram Healthcare Corporation ("Coram"), a Delaware corporation, and defendant Aetna U.S. Healthcare, Inc., ("Aetna"), a Pennsylvania corporation, were parties to a written Master Agreement which called for Coram to provide home healthcare services to members of Aetna's HMO plans. Coram has filed this diversity action against Aetna seeking damages for fraud, negligent misrepresentation, and breach of contract. Coram also seeks injunctive and declaratory relief, rescission of the contract based on fraud and misrepresentation, and rescission of the contract based on mistake. Before the court is Aetna's motion to dismiss Counts I (fraud), II (negligent misrepresentation), V (rescission based on fraud and misrepresentation), and VI (rescission based on mistake). Finally, Aetna moves for a more definite statement as to Counts III (breach of contract) and IV (declaratory/injunctive relief).

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court may rely upon allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). All well-pleaded factual allegations in the complaint are assumed to be true and are viewed in the light most favorable to the non-movant. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A complaint should be dismissed pursuant to Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### I.

We accept the following facts as true for purposes of considering Aetna's motion. Coram develops and administers networks of providers which work with managed care organizations to provide home healthcare. On April 22, 1998, after extensive negotiation, Coram and Aetna executed a Master Agreement under which Coram would receive compensation on a per member/per month basis in exchange for providing home healthcare to approximately 1.9 million members of Aetna's commercial insurance plans and 200,000 members of Aetna's Medicare plans.

Coram avers that Aetna, during the negotiations for the Master Agreement, fraudulently, negligently, or mistakenly misrepresented the number of HMO members who would actually use Coram's healthcare network. Relying on the numbers presented by Aetna, Coram agreed to a fixed compensation schedule. However, the number of members needing home healthcare was much higher, and Coram was forced to provide services without payment from Aetna. Aetna also purportedly

misrepresented the total number of people participating in its HMO plans. Instead of 1.9 million members, Aetna's commercial population was 2.25 million. In addition, Aetna failed to include over 100,000 employees for AT & T/Lucent for whom Coram would have to provide home healthcare. Aetna also allegedly misrepresented its intention to fulfill its obligations under the Master Agreement, as well.

## II.

As a threshold matter, we must decide whether Pennsylvania or Delaware law applies to the claims which are the subject of Aetna's motion to dismiss. In determining this issue as a federal court exercising diversity jurisdiction, we look to the choice of law rules of Pennsylvania—the state in which this court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ A choice of law analysis becomes necessary because Pennsylvania and Delaware maintain different parol evidence rules. In general, the parol evidence rule renders evidence of prior or contemporaneous agreements, whether written or oral, inadmissible to the extent they are inconsistent with the parties' written, final agreement. *See* Restatement 2d Contracts § 213; *Cunningham v. Esso Standard Oil Co.*, 118 A.2d 611, 613 (Del.1955); *In re Carter*, 390 Pa. 365, 134 A.2d 908, 912 (1957). In Pennsylvania, it is now settled that the parol evidence rule bars claims of fraud in the inducement and only allows claims of fraud in the execution.[1] *See Dayhoff, Inc. v. H.J. Heinz, Co.*, 86 F.3d 1287, 1300 (3d Cir.1996); *1726 Cherry Street Partnership v. Bell Atlantic Properties, Inc.*, 439 Pa.Super. 141, 653 A.2d 663, 666 (1995); *see also HCB Contractors v. Liberty Place Hotel Assoc.*, 539 Pa. 395, 652 A.2d 1278, 1279 (1995). Thus, a party may assert that provisions of a written agreement "were omitted by fraud, acci-

dent or mistake," but not that it was induced to enter a contract by fraudulent misrepresentation. *See id.; 1726 Cherry Street*, 653 A.2d at 666. As the Court of Appeals for the Third Circuit has recognized, Pennsylvania's "parol evidence rule bar[s] consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently omitted from the contract." *Dayhoff*, 86 F.3d at 1300. The Pennsylvania parol evidence rule is premised on the principle that if a sophisticated, well-represented party like Coram intends to rely on significant representations made prior to the execution of a fully integrated contract, that party can protect itself from fraud or mistake by including those representations in the final written agreement. *See Armstrong World Indus., Inc. v. Robert Levin Carpet Co.*, No. CIV.A. 98–5884, 1999 WL 387329, at *5 (E.D.Pa. May 20, 1999); *1726 Cherry Street*, 653 A.2d at 670. In short, Pennsylvania seeks to protect parties from fraudulent inducement claims which could have been prevented by more complete, more thorough contract formation.

■ Delaware takes a different approach. Its parol evidence rule does not bar claims of either fraud in the inducement or fraud in the execution. Delaware admits parol evidence to prove fraud in any form. *See Anglin v. Bergold*, No. 185,-1988, 1989 WL 88625, at *2 (Del. June 26, 1989); *see generally* Restatement (Second) of Contracts § 21. "[T]he parties, because of either fraud or mistake, did not assent to a certain writing or writings as the agreement between the parties; therefore, the parol evidence rule does not apply to a [fraudulently induced] contract." *James River–Pennington, Inc. v. CRSS Capital, Inc.*, 1995 WL 106554, No. CIV.A. 13870,

---

1. The Pennsylvania Supreme Court has recognized "an exception to the strict application of the parol evidence rule in sales and leases of real estate where [false] oral representations regarding the lack of physical defects in

the property were made." *HCB Contractors v. Liberty Place Hotel Associates*, 539 Pa. 395, 652 A.2d 1278, 1280 (1995). This limited exception is not relevant to Coram's claim of fraud.

at *6 (Del. Ch. Mar. 6, 1995) (citing 4 Williston on Contracts § 634, at 1017–18).

Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws which "generally honor[s] the intent of the contracting parties and enforce[s] the choice of law provisions in contracts executed by them." [2] *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir.1994); *see, e.g., Chestnut v. Pediatric Homecare of America, Inc.*, 420 Pa.Super. 598, 617 A.2d 347, 350–51 (1992). Paragraph 19 of the Master Agreement between Coram and Aetna, entitled "Governing Law," states, "This Agreement shall be governed by the laws of the State of Delaware." Both parties agree that Delaware law applies to Coram's breach of contract claim. The question remains whether Coram's claims of fraudulent inducement to enter into the contract and inducement by negligent misrepresentation, set forth in Counts I and II of its complaint, are subject to the Master Agreement's choice of law provision.

█ We read the language of the Master Agreement to mean that only claims relating to the construction and interpretation of the contract will be judged according to Delaware law. In essence, Coram and Aetna have agreed that that state's law will control those issues involving their rights and duties under the contract itself. A breach of contract claim is clearly contemplated. Beyond this, the parties did not go. They did not provide more broadly that Delaware law would apply to tortious conduct that led up to the execution of the contract or to other actions arising out of their relationship. *See Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir.1996). Significantly, they did not refer to the matter of contract validity. If these sophisticated parties had wanted a more expansive choice of law provision, they could easily have drafted one. For example, as other parties have done, Coram and Aetna could have inserted language that Delaware law governed "all matters, including, but not limited to, matters of *validity,* construction, effect or performance." (emphasis added). *Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F.Supp. 151, 157 (W.D.Pa.1992); *see, e.g., Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 624, 628 (4th Cir. 1999). They did not, and we will not rewrite the contract for them.

Claims by Coram for fraudulent inducement and inducement by negligent misrepresentations emanate from events that occurred *before* the agreement even came into being and are separate and distinct from any breach of contract, which presupposes the existence of a valid agreement. Thus, the fraud and negligent misrepresentation claims are not subject to the parties' contractual choice of law since the "fair import of the provision [does not] embrace[ ] all aspects of the legal relationship" between Coram and Aetna. *Jiffy Lube Intern'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F.Supp. 569, 576 (E.D.Pa.1994); *see also, Brown v. SAP America*, No. C.A.

**2.** Section 187 provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

98–507–SLR, 1999 WL 803888, at *5 (D.Del. Sept.13, 1999).

This court, therefore, must employ Pennsylvania's general choice of law rules in deciding what substantive law governs these two claims. Pennsylvania has adopted a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796, 805 (1964). This analysis consists of two steps. First, we "look to see whether a false conflict exists" between the competing policies and interests of the relevant states. *LeJeune v. Bliss–Salem, Inc.,* 85 F.3d 1069, 1071 (3d Cir.1996). A false conflict exists when "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir.1991). If a false conflict exists, we will apply the law of the state whose interests are truly implicated by the particular cause of action. *See id.* A true conflict, on the other hand, exists when the interests of each state would be impaired if the law of the other is given effect. *See id.* at 187 n. 15. By admitting parol evidence to prove all fraud claims, Delaware has manifested an interest in protecting its citizens from the harmful consequences of an ill-gotten agreement. In contrast, Pennsylvania has adopted a defendant-protecting rule which bars fraud in the inducement claims. The application of one jurisdiction's law will clearly frustrate the intent of the other state's law, creating a true conflict which requires "a deeper analysis." *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854, 856 (1970). Consequently, we must take the second step under the Pennsylvania choice of law analysis and decide "which state has the greater interest in the application of its law." *Id.; see LeJeune,* 85 F.3d at 1072.

To make this determination, we review "what contacts each state has with the [events giving rise to the claim], the contacts being relevant only if they relate" to the policies and interests identified in the first step. *Cipolla,* 267 A.2d at 856. Pennsylvania courts have often looked to the Restatement to identify what contacts to consider. *See Lacey,* 932 F.2d at 187; *see, e.g., Laconis v. Burlington County Bridge Comm'n,* 400 Pa.Super. 483, 583 A.2d 1218, 1222–23 (1990); *Miller v. Gay,* 323 Pa.Super. 466, 470 A.2d 1353, 1355–56 (1983). The contacts, which are to be measured qualitatively rather than quantitatively, include: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, place of business, and place of incorporation of the parties; and the place where the relationship between the parties is centered. Restatement (Second) of Conflict of Laws § 145(2); *see, e.g., Cipolla,* 267 A.2d at 856. In fraud cases, the Restatement places particular importance on the "state where the false representations were made and received" if the "plaintiff's action in reliance took place" in the same state. Restatement (Second) of Conflict of Laws § 148(1).

Delaware has only one contact with the events giving rise to this lawsuit. Coram is incorporated under its law. The quality of this contact, however, is diminished by the fact that Coram's principal place of business is in Colorado and that Coram chose to do business with Aetna in Pennsylvania. The contacts with Pennsylvania, by contrast, are both more numerous and substantial. First, Aetna is a Pennsylvania corporation with its principal place of business here. Second, it is undisputed that the negotiation and execution of the Master Agreement took place in Pennsylvania. The place of the conduct causing the alleged wrong and the center of the parties relationship were both in this Commonwealth. Accordingly, Pennsylvania law controls Coram's claims for fraud in the inducement and negligent representation in the inducement.

## III.

For the Pennsylvania parol evidence rule to bar a claim for fraudulent

inducement, the contract must be written, unambiguous, and fully integrated. Coram does not assert ambiguity or lack of a writing. The Master Agreement between Coram and Aetna is also fully integrated. It contains two integration clauses. The first clause, located on the Execution Sheet, states, "This Agreement ... constitutes the complete and exclusive contract between the parties ... and supersedes any and all prior contemporaneous oral and written communications or proposals not expressly included herein." The second clause provides, "This Agreement ... constitutes the entire understanding of the parties hereto and no changes, amendments, waivers, or alterations shall be effective unless signed by both parties." Although the presence of these integration clauses is not dispositive, *Greenberg v. Tomlin*, 816 F.Supp. 1039, 1053 (E.D.Pa. 1993), their effect "is to make the parol evidence rule particularly applicable." *McGuire v. Schneider, Inc.*, 368 Pa.Super. 344, 534 A.2d 115, 117 (1987). The fact that the prior representations and oral agreements alleged by Coram "are specifically dealt with in the written contract" also indicates full integration of the parties' agreement. *Id.* The contract, as written, contains the parties' understanding of the payment schedule, the amount of consideration, and the base utilization rate. Being both unambiguous and fully integrated, the Master Agreement "must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and ... oral testimony ... [is not] admissible to explain or vary the terms of the contract." *Id.* at 117–18 (citations omitted).

Under the Pennsylvania parol evidence rule as outlined in *Dayhoff, HCB Contractors,* and *1726 Cherry Street,* Coram's evidence of fraudulent misrepresentations in the inducement made prior to the execution of the Master Agreement is inadmissible, whether the claim sounds in tort or contract. *Armstrong World Indus., Inc. v. Robert Levin Carpet Co.,* No. CIV.A. 98–5884, 1999 WL 387329, at *5 (E.D.Pa. May 20, 1999). Accordingly, the motion of Aet-na to dismiss Count I of Coram's complaint will be granted.

The Pennsylvania parol evidence rule also bars evidence of negligent misrepresentation. The difference between fraud and negligent misrepresentation, namely a state of mind requirement for the fraud claim, does not affect the rationale behind Pennsylvania's parol evidence rule. *See HCB Contractors v. Liberty Place Hotel Assoc.,* 539 Pa. 395, 652 A.2d 1278, 1279 (1995); *Bardwell v. Willis Co.,* 375 Pa. 503, 100 A.2d 102, 104 (1953). Whether Coram was fraudulently induced or negligently induced to sign the Master Agreement, Coram retained the ability to protect its interests by including Aetna's critical representations in the final accord. The Master Agreement, furthermore, remains unambiguous and fully integrated, regardless of the intent with which Aetna allegedly caused Coram to agree to the contract. There is simply no sound reason to distinguish between fraud and negligent misrepresentation for present purposes. *See Regent Nat'l Bank v. Dealers Choice Automotive Planning, Inc.,* No. CIV.A. 96–7930, 1997 WL 786468, at * 5–6 (E.D.Pa. Nov.26, 1997). Therefore, the motion to dismiss Count II of plaintiff's complaint will also be granted.

## IV.

We now turn to that part of Aetna's motion seeking to dismiss Count V and Count VI of the complaint. Count V contains Coram's claim for rescission based on inducement by fraud and misrepresentation and Count VI alleges Coram's claim for rescission based on inducement by mistake. Again, we must resolve whether Delaware or Pennsylvania law controls.

While Coram speaks in terms of claims for relief, rescission is really an equitable remedy rather than a cause of action or a claim for relief. Under Pennsylvania law, rescission is described as:

> the unmaking of a contract, and is not merely a termination of the rights and

obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. The purpose of an equitable rescission is to return the parties as nearly as possible to their original positions with regard to the subject matter of the contract. One who wishes to rescind a contract must restore or tender a return of the property or security which was the subject matter of the contract.

*Keenheel v. Securities Comm'n,* 134 Pa. Cmwlth. 494, 579 A.2d 1358, 1361 (1990) (citations omitted). The Delaware Supreme Court similarly explains:

Essentially, the equitable remedy of rescission results in abrogation or "unmaking" of an agreement, and attempts to return the parties to the *status quo.* Common grounds for rescission of a contract for the sale of real property include fraud, misrepresentation and mistake. But in addition to rescission for fraudulent misrepresentation, rescission also may be granted under certain circumstances for innocent misrepresentations made by a seller.

*Norton v. Poplos,* 443 A.2d 1, 4 (Del.1982) (citations omitted).

■ We first consider the parties' choice of law provision in the Master Agreement, which states, "This Agreement shall be governed by the laws of the State of Delaware." We do not believe that this narrowly drawn sentence encompasses the remedy of rescission or the claims for which this remedy is sought. As we explained earlier, the wording of the choice of law provision presupposes the existence of a valid agreement and thus encompasses only the interpretation and construction of the contract itself. It cannot be construed to read that Delaware law governs any tortious conduct of the parties or any other dimension of their relationship. The choice of law clause in the Master Agree-

ment does not reference the issue of validity. *See, e.g., Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.,* 795 F.Supp. 151, 157 (W.D.Pa.1992). Nor does it even go so far as to provide that the agreement shall be deemed to have been made in Delaware. *See, e.g., Bemer Aviation, Inc. v. Hughes Helicopter, Inc.,* 621 F.Supp. 290, 294 (E.D.Pa.1985). Significantly, it is silent with respect to any claims arising out of the events leading to contract formation or the parties' negotiations. Unlike a claim of breach of contract seeking money damages, rescission comes into play only when a party is attacking the validity of the agreement, that is, challenging whether there was ever a meeting of the minds. Rescission is a remedy in equity to void a contract ab initio and to return the parties to their positions prior to the execution of the writing or to do so to the extent possible. *Norton,* 443 A.2d at 4; *Fichera v. Gording,* 424 Pa. 404, 227 A.2d 642, 643–44 (1967). In this regard, we must look to the underlying events which occurred before any writing was executed. Those events took place here in Pennsylvania, not Delaware. Had these sophisticated parties desired Delaware law to apply to issues of validity, they could readily have inserted a clause to this effect. Absent such a provision, we follow the contacts analysis under the Pennsylvania choice of law rules. Pennsylvania clearly has more contacts with the claims in question than Delaware, and, therefore, the substantive law of the former governs.

■ Even if Coram would ultimately attempt to elect the remedy of rescission, it is not available in Pennsylvania under the circumstances alleged. According to Coram's complaint, rescission of the Master Agreement is being sought based on fraudulent or negligent inducement or inducement by mistake. Unfortunately for Coram, the Pennsylvania parol evidence rule precludes it from proving the necessary predicates to obtain this remedy.[3] In

**3.** The Pennsylvania parol evidence rule bars evidence of mistake as well as evidence of fraudulent and negligent misrepresentation.

*See HCB Contractors,* 652 A.2d at 1279; *Bardwell v. Willis Co.,* 375 Pa. 503, 100 A.2d 102, 104 (1953).

*1726 Cherry Street Partnership v. Bell Atlantic Properties, Inc.*, 439 Pa.Super. 141, 653 A.2d 663 (1995), the plaintiffs alleged they were fraudulently induced to enter into a contract for the sale of a parcel of land. They sought rescission of the contract, among other remedies. The Court of Common Pleas dismissed the complaint, holding that the parol evidence rule barred the cause of action, even where rescission was the requested relief. The Superior Court affirmed.

Since rescission is unavailable to Coram under Pennsylvania law, Counts V and VI of the complaint will be dismissed.

### IV.

Finally, Aetna moves for a more definite statement as to Count III (breach of contract) and Count IV (declaratory/injunctive relief) of plaintiff's complaint, but it has not briefed the issue. We find Coram's complaint to be quite detailed. Aetna's motion in this respect is without merit and will be denied.

### ORDER

AND NOW, this 16th day of November, 1999, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of Aetna U.S. Healthcare Inc. to dismiss Counts I, II, V, and VI of plaintiff's complaint is GRANTED to the extent said counts allege fraud, negligent misrepresentation, or mistake prior to or at the time of the execution of the Master Agreement; and

(2) the motion of Aetna U.S. Healthcare Inc. for a more definite statement as to Counts III and IV of plaintiff's complaint is DENIED.