Teresa McCLAIN, Plaintiff(s),

v.

**COVERDELL & COMPANY,**
et al. Defendant(s).

No. 00–71881.

United States District Court,
E.D. Michigan,
Southern Division.

July 21, 2003.

---

William Pultusker, Southfield, MI, E. Powell Miller, Marc L. Newman, Miller Shea, Troy, MI, for plaintiff.

James D. Brown, Scott S. Crocker, Winstead, Sechrest, Dallas, TX, Robert A. Marsac, Lisa A. Robinson, Williams Mullen, Detroit, MI, for defendants.

## OPINION AND ORDER [1]

TARNOW, District Judge.

Plaintiff Teresa McClain alleges that she was the victim of an insurance telemarket-

---

1. Law Clerk Amy Harwell provided quality research assistance.

ing scheme, and she is seeking certification of a class action on behalf of herself and all others similarly situated. Before reaching the class certification issues, the case is before the Court on Defendants' Motion to Dismiss the Third Amended Complaint and Defendants' Motion for Summary Judgment. On March 18, 2003, the Court held oral argument and took the motions under advisement.

After considering the arguments and reviewing the parties' pleadings, the Defendants' Motion to Dismiss is DENIED IN PART on the RICO claim, GRANTED IN PART on the breach of contract claim (Count VII), and Plaintiff is GRANTED leave to amend the Consumer Protection Act allegations. Finally, Defendants' Motion for Summary Judgment is DENIED.

## II. BACKGROUND

### A. Substantive Facts

Plaintiff Teresa McClain alleges that she was the victim of an insurance telemarketing scheme. There are four Defendants. Defendant Coverdell and Company ("Coverdell") is a Georgia corporation. Defendant Inter–Media Marketing, Inc. ("IMM") is a telemarketing provider from Pennsylvania. Defendant Monumental Life Insurance Company ("Monumental") is an insurance company. Defendant Direct Response Insurance Administrative Services, Inc. ("DRIASI") is from Minneapolis, MN.

Plaintiff says she purchased an accidental death insurance product after Defendants perpetrated a scheme of "hiring unlicenced telemarketers, who contacted her using information obtained from her bank, and who employed high pressure, deceptive, and misleading sales practices to sell insurance products of extremely limited value" (Compl. at ¶ 1).

Plaintiff alleges that Defendant Coverdell obtained confidential account and personal information about bank customers' from at least thirteen banks. Telemarketers employed by IMM (a telemarketing firm) contacted the banks' customers by phone. The telemarketers held themselves out as bank representatives and offered $1,000 of "free" insurance. Plaintiff states that the insurance was underwritten by Defendant Monumental. She alleges that Coverdell conspired with Defendant DRIASI to establish automatic withdrawal of the insurance premiums from the banks' customers.

She alleges the telemarketers made several false misrepresentations, such as: 1) they were calling on behalf of the bank; 2) the enrollment deadline for purchasing the insurance had been extended, when there was no deadline at all; 3) customers would be receiving something for free; 4) and class members would be receiving life insurance, rather than accidental death life insurance (P's Resp. Brief at 2).

Plaintiff also alleges that the telemarketers failed to disclose several material facts, such as: 1) they were not representatives of the banks, but had merely purchased the information from the banks; 2) the insurance was not traditional term life insurance, but was "rather limited accidental death insurance;" 3) the price charged to the policy was excessive compared to what similar policies sell for; 4) the time to report a claim is unreasonably short, 5) the monthly premiums would be deducted from their bank accounts and an overdraft fee would be charged if there were insufficient funds, and 6) the policy would be automatically cancelled if the bank account were closed (P's Resp. Brief at 3).

Plaintiff states that once the bank customers "ostensibly" agreed to purchase the insurance, Defendants started automatically deducting the monthly premium payments. She states that there was little or no indication on the customers' bank statements, nor any separately mailed confirmation, of the deduction and what it was

for. In fact, she alleges she only received one written confirmation about the insurance, and it was from a previously undisclosed party, Defendant DRIASI, so the notification looked like junk mail.

### B. Procedural History

Defendants removed Plaintiff's original complaint from Wayne County Circuit Court on April 24, 2000. Plaintiff's filed an amended class action complaint on February 16, 2001. On September 25, 2001, the parties stipulated to allow Plaintiff to file a second amended complaint. Defendants filed a Motion to Dismiss Second Amended Complaint on December 13, 2001. On January 29, 2002, Plaintiff filed a Motion for Class Certification.

The Court originally held oral argument on April 4, 2002, and after settlement discussions reached an impasse, the parties returned to complete oral argument on June 14, 2002. At that hearing, the Court granted Plaintiff leave to file a Third Amended Complaint. The parties withdrew their previous motion to dismiss and to certify the class in light of the new, forthcoming complaint.[2]

Plaintiff filed a Third Amended Complaint on July 23, 2002. Defendants filed a Motion to Dismiss on December 2, 2002, and a Motion for Summary Judgment on January 9, 2003.

### III. STANDARD OF REVIEW

For the Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6) states that a claim may be dismissed for "failure to state a claim upon which relief can be granted." The sufficiency of a complaint is a question of law. In reviewing the complaint, "[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, and accept all well pleaded allegations as true. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). "The court is not, however, bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987), or legal conclusions unsupported by well-pleaded facts. *Teagardener v. Republic–Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990)." *Sharp v. Ingham County*, 23 Fed. Appx. 496, 498, 2001 WL 1557062, *1 (6th Cir.2001) (unpublished).

Rule 8(a)(2) requires that a complaint include only a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. PRO. 8(a)(2). "A complaint should not be dismissed 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80(1957)). The Supreme Court recently reaffirmed the principle that only a short and plain statement of the claim, not a prima facie case, is necessary to survive a Motion to Dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with

---

**2.** On November 12, 2003, the Plaintiffs filed notice that they had served a "Renewed Motion for Class Certification on Third Amended Complaint" on Defendants, but no further documents regarding class certification were ever filed with the Court. Unless the parties advise the Court differently, the Court will consider the November 12th document a notice of reinstatement of the prior Motion for Class Certification and accompanying briefs. Therefore, the prior motions are reinstated on the Court's docket as of today, and oral argument will be scheduled shortly.

limited exceptions."). The "limited exceptions" referred to in *Swierkiewicz* are found in Rule 9. The rule states, in relevant part:

> (b) **Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

FED. R. CIV. PRO. 9(b).

As for summary judgment, it is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party must meet its initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet this burden by demonstrating to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. *Bradford*, 886 F.2d at 1479.

Where the movant has carried his burden under Rule 56(c), to defeat summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the non-movant must present "affirmative evidence" to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether facts are material is determined by the substantive law governing the case. *Id* at 248, 106 S.Ct. 2505. In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, admissions, and affidavits in the light most favorable to the non-moving party. *Id.* at 247, 106 S.Ct. 2505.

## IV. ANALYSIS

### A. Motion to Dismiss

The Defendants have moved to dismiss the Third Amended Complaint on three grounds.

### 1) *RICO*

 The Defendants claim that Plaintiff has failed to sufficiently allege a "cognizable injury to business or property," which is required to state a claim under RICO.[3] Title 18 U.S.C. § 1964(c) requires

---

**3.** Prior to reaching the merits, the Plaintiff argues that, at the previous hearing, the Court held that all of the RICO allegations were sufficient except the enterprise ones. Since Plaintiff has now strengthened those, she asserts that the RICO claim should not be subject to further attack in the present motion to dismiss. She is basing her argument on the Court's statement at the June 14, 2002 hearing, where the Court stated:

> I'll tell you now that I have no problem finding the mail fraud and the two acts and all the other requirements of RICO. But I have great difficulty finding in your pleadings any allegation of independent enterprise.

The Defendants respond that none of the other RICO issues were discussed at the last hearing except for enterprise and mail/wire fraud, so they argue that the Court's statement did not cover all of the RICO requirements. In the alternative, if the Court did mean that all of the other RICO requirements were sufficiently plead, they ask the Court to reconsider because they did not have a chance for oral argument before the Court made its decision.

The Court agrees with the Defendants that there was no oral argument regarding RICO except as to mail fraud, wire fraud, and enterprise, and the Court's statement was merely

a RICO plaintiff to show that she suffered "an injury to business or property" as a result of a reliance on a material misrepresentation.[4] In essence, it is a standing requirement before a plaintiff is allowed to go forward. *Maio v. Aetna,* 221 F.3d 472, 482 n. 7 (3rd Cir.2000). Defendants argue that there is no cognizable injury because Plaintiff was not denied benefits—she is still alive, so she has not tried to make a claim for death benefits. Defendants assert this case is factually similar to *Maio* where the plaintiffs claimed that each member of the putative class paid too much in premiums for "inferior" health insurance offered by Defendant Aetna. 221 F.3d at 484. In *Maio,* the Third Circuit held that, in the absence of allegations that plaintiffs were denied care under Aetna's structure, even though it was allegedly fraudulently advertised to the plaintiffs, there was no basis for a RICO claim. In *Maio,* 221 F.3d at 488, the Court stated:

> [w]e hold that appellants cannot establish that they suffered a tangible economic harm compensable under RICO unless they allege that health care they received under Aetna's plan actually was compromised or diminished as a result

directed at the elements discussed at the hearing. Therefore, the Defendants can assert that Plaintiff has not stated a RICO claim on the other elements.

4. In addition, title 18 U.S.C. § 1962 requires:
 1) The commission of two or more predicate RICO offenses;
 2) The predicate offenses formed a "pattern of racketeering activity"
 3) The existence of an "enterprise" as defined under RICO;
 4) A nexus between the pattern of racketeering activity and the enterprise, and;
 5) Damage resulting from the above factors.

Title 18 U.S.C. § 1962(a)-(c); *VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696, 699 (2000).

In addition to those general elements common to all RICO claims, there are separate requirements under each of the § 1962 subparts. Subpart (a) prohibits "the use or investment" of any income derived from a pattern or racketeering activity "in the establishment or operation of, any enterprise." The parties call this an "investment injury." Subpart (b) prohibits "acquisition or control of any enterprise" involved in racketeering activity. The parties call this an "acquisition injury." Subpart (c) prohibits one from conducting or participating directly or indirectly, in the conduct of such enterprise's affairs. The Supreme Court has interpreted this language to mean that one must have "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Finally, subpart (d) prohibits a conspiracy to violate subparts (a), (b), and (c).

of Aetna's management decisions challenged in the complaint.

Plaintiff responds that *Maio* is distinguishable because, here, unlike *Maio,* the RICO injuries are not the difference between the insurance represented and the insurance provided; it is not a claim that Plaintiff was given an "inferior" insurance policy or paid too much for an insurance policy as it was in *Maio.* Rather, Plaintiff's claim is a monetary one for the premiums that she was induced to pay and that she alleges she would not have paid without the fraudulent representations.

The Plaintiff has the better argument. She has not merely alleged that she paid too much for worthless insurance (although that does seem to be part of her overall theory of the case). She has also alleged that she would never have purchased the insurance without the fraudulent misrepresentations or omissions, which is a property interest. Basically, unlike the plaintiffs in *Maio,* she asserts that she lost money. The defendants in *Maio* did not allege that they would not have bought Aetna's insurance without the fraudulent misrepresentations. Rather, they just alleged that they were paying too

much in premiums for an "inferior," fraudulently advertised insurance product. After comparing Plaintiff's allegations to *Maio,* the Court concludes that *Maio* is not applicable.

The Defendants are characterizing Plaintiff's claim too narrowly by quoting one or two phrases from the Complaint and then concluding that those small portions are Plaintiff's entire case. Instead, looking at Plaintiff's Complaint as a whole, the Court must ask if there is any set of facts by which the Plaintiff could state a claim. It is clear from the Complaint that another aspect of Plaintiff's Complaint is that she would not have paid for the insurance at all if there had been no fraud by the Defendants. She has stated an actual, concrete, monetary loss, which is a cognizable injury. Consequently, Defendants' argument is without merit, and their motion to dismiss is DENIED IN PART as to the RICO claim.

### 2) *Michigan Consumer Protection Act*

■ Defendants are seeking dismissal of paragraphs 29–42 and 108 of the Third Amended Complaint, which involve allegations that Defendants violated the Michigan Consumer Protection Act ("MCPA").[5]

The parties agree that Plaintiff can state a claim under "Old" M.C.L. § 445.904 due to the date this action was filed. "Old" M.C.L. § 445.904 stated that:

(1) This act does not apply to either of the following:

(a) a transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.

. . . . .

(2) Except for the purposes of an action filed by a person under section 11, this act does not apply to an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by:

(a) Chapter 20 of the insurance code of 1956 . . .

Thus, the parties' agreement is that the Plaintiff can state a claim under old § 445.904 for "unfair, unconscionable, or deceptive method, act, or practice" that is unlawful under Chapter 20 of the insurance code, which is M.C.L. §§ 500.2001 to 500.2093.

Defendants argue the paragraphs should be dismissed because paragraphs 29–42 and 108 do not allege violations of M.C.L. §§ 500.2001 to 500.2093 but instead refers to other sections of the code where there is no private right of action available.

Plaintiff responds that "[a]ll of the conduct relating to Plaintiff's MCPA claim also constitutes violations of Chapter 20 including, for example, an 'unfair or deceptive act or practice in the business of insurance,' and 'making . . . placing before the public . . . any assertion, representation or statement with respect to the business of insurance . . . which is untrue, deceptive or misleading'. MCL § 500.2003 and § 500.2007." She argues that this Court should reject Defendants' overly narrow view because "clearly" Defendants can violate a section outside of Section 20, which also violates Section 20.

While Plaintiffs may be correct that the Defendants' conduct violates both Section 20 and another section, as alleged, which is all the Court is concerned with at this stage in the proceedings, the paragraphs identified by Plaintiffs do not allege a violation of Section 20. Plaintiff contends that some of them merely explain the

---

5. Originally, there were a few more paragraphs in dispute, but the Plaintiff agreed that paragraphs 44 and 45 should be dismissed, and Defendants agree that 43 and 109 should not be dismissed.

background, and the Court accepts that as to some of the allegations that do not cite a specific statute. But many of the allegations assert that Defendants' conduct violated other provisions of the insurance code, such as § 500.1212, which is not covered by the Chapter 20 exception. While the Court is loathe to solicit a fourth amended complaint, one is warranted for the limited purpose of allowing Plaintiff specifically cite what section of Chapter 20 Defendants are alleged to have violated. Michigan law carved a very narrow exception for violations of Chapter 20. Instead of the Court searching Chapter 20, comparing it to the Complaint, and guessing which section Plaintiff might have alleged, the Plaintiff must set forth the specific section that was violated to satisfy the narrow exception.

Therefore, the Defendants' Motion to Dismiss is GRANTED IN PART as to the MCPA allegations. The Fourth Amended Complaint may only address the MCPA allegations found in paragraphs 29–42 and 108. Specifically, some of the paragraphs can been left in as background, such as 30, 31, 34, 38, and 39. Many of them should be amended, such as 29, 32, 35, 37, 40, 41, 42, and 108. It is not clear whether paragraphs 33 and 36 should be amended, as they could be background, or they could be referring to specific violations of Chapter 20, so that is left to the Plaintiff's discretion.

### 3) *Breach of Contract*

■ Plaintiff added a breach of contract claim to her Third Amended Complaint, asserting a right to recision of an unconscionable contract. She is seeking either total recision (and the return of her mon-

ey) or reformation of the unconscionable terms.

In support of her argument, the Plaintiff cites two cases. The first case, *Dairyland Power Coop. v. Amax, Inc.*, 700 F.Supp. 979, 992–93 (W.D.Wis.1986), is irrelevant because the quoted language regards the statute of limitations discussion rather than the breach of contract discussion. The second, *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F.Supp.2d 589, 596 (E.D.Pa.1999) states:

> Unlike a claim of breach of contract seeking money damages, recision comes into play only when a party is attacking the validity of the agreement, that is challenging whether there was ever a meeting of the minds. Recision is a remedy in equity to void a contract *ab initio* and to return the parties to their positions prior to the execution of the writing or to do so to the extent possible.

*Coram* does not support Plaintiff's position. First, Plaintiff is seeking money damages—her premiums back—whereas the plaintiff in *Coram* was not. *Id.* ("[u]nlike a claim of breach of contract seeking money damages ... "). Second, as for reformation of unconscionable terms, Plaintiff already terminated the contract, so there is no contract to reform. Thus, even if other class members who still have the insurance are entitled to reformation, Plaintiff is not. As she is the only Plaintiff in the Complaint, the allegations stand or fall only as to her. Third, Plaintiff does not assert that there was no "meeting of the minds" because she admits she agreed to the contract (as she must, since there is a tape recording of her acceptance).[6]

**6.** In fact, in the Summary Judgment arguments, *infra* Sections IV.B.1 and IV.B.3, Plaintiff urges this Court to credit Plaintiff's affidavit where she admits buying the insurance over her deposition where she seemingly denies buying the insurance. So if she is claiming here that there was not a meeting of the minds, then her claim would be in direct contradiction to her argument below urging rejection of Defendants' position that Plaintiff cannot show reliance if she did not buy the insurance.

Finally, and most importantly, Plaintiff concedes there was no breach in the traditional sense of the word. Plaintiff is alive, so she never made a claim for accidental death benefits that was denied. In the absence of breach, there can be no breach of contract claim. Thus, Defendant's Motion to Dismiss is GRANTED IN PART and Count VII of the Third Amended Complaint is DISMISSED.

### B. Defendants' Motion for Summary Judgment

Defendants' summary judgment motion is based on several grounds and each will be addressed below.

#### 1) Lack of Reliance

■ Defendants first argument is that there was no reliance, and it is directed at Counts I, III, and IV, the RICO, fraudulent inducement, and fraudulent omission counts, respectively. Defendants assert that the only ways for Plaintiff to show reliance is: (1) if she purchased the insurance based on a representation that turned out to be false, or (2) she would not have purchased the insurance if Defendants had given her omitted information. Here, however, Ms. McClain testified in her deposition that she did not buy insurance. Defendants argue that if she never bought anything, she could not have relied on any of those statements or omissions. Without reliance, Defendants assert they are entitled to summary judgment on the RICO, fraudulent misrepresentation, and fraudulent omission claims.

■ Plaintiff argues that her affidavit is clear that she was induced by falsities to purchase the insurance, despite what her deposition states. She argues that she "was so misled by the transaction and its deceptive nature that she did not know what she had agreed to," and her deposition is just further evidence of the successful nature of the deception.[7]

---

7. In addition to above argument, the Plaintiff raises whether reliance is even an element she has to prove. Particularly, on the fraudulent omission count, she argues that materiality, and not reliance, is required because there cannot be reliance on something that was never said, citing *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

Then, generalizing from her point about fraudulent omission, she states without further explanation that "for Plaintiff to prevail on her claims, she can prove reliance merely by establishing that she purchased the insurance" and provides a string cite in support. Thus, the Court will address two questions: (1) whether the fact that she purchased the insurance is enough to demonstrate reliance for all of the claims, and (2) whether reliance is an element of fraudulent omission claims in particular.

First, as to whether purchasing insurance establishes reliance for all three claims, the only case cited by Plaintiff that is based on Michigan law is *Dix v. American Bankers Life Assurance Co. of Florida*, 429 Mich. 410, 416, 415 N.W.2d 206 (1987). And, as the Defendants indicate, *Dix* does not apply because it merely holds that individual reliance did not have to be proven to maintain a class action under the MCPA. *Dix* does not hold that reliance is not an element of common law fraud claims, as Plaintiff asserts. As for the many other cases cited by Plaintiff in her string cite, Defendants argue they are inopposite for various reasons. Instead of discussing each one, the Court notes that none of them rely upon Michigan law. Thus, Plaintiff has no support for her proposition that merely purchasing insurance is sufficient to demonstrate reliance under Michigan law, and, as such, the Court rejects Plaintiff's proposition.

Second, arguing that reliance is not an element of fraudulent omission claims, Plaintiff cited *Affiliated* in support, which states that:
Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.
406 U.S. at 153–54, 92 S.Ct. 1456. Defendant responds that *Affiliated* is inapplicable because it was not based on Michigan law,

There is no question that Ms. McClain testified at her deposition that she had never purchased any insurance coverage of any kind. Defendants also point to the Insurance Complaint Form Ms. McClain filed, where Plaintiff stated, "I did not order this insurance . . . ." However, Plaintiff submitted an affidavit admitting that she did buy the insurance, but she only did so because she thought it was being offered by her bank for free.

Defendants argue that this Court should not credit the affidavit because it was created after the contrary sworn deposition testimony and the insurance complaint form she submitted. However, affidavits are evidence, and it is for the jury, not the judge, to decide whether to believe the affidavit or the deposition testimony. Defendants are free to use Ms. McClain's deposition testimony against her at trial, but for now, she has submitted evidence to support her argument that she relied on Defendants' "misstatements." Defendants' summary judgment motion is DENIED on this ground.

and it only applies to federal securities cases. In support, Defendants cite *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 335 (S.D.Fla.1996), which states:

> Since the defendant under these counts are not being sued for securities law violations, the fraud-on-the-market and *Affiliated Ute* presumptions of reliance are not available to plaintiffs here with regard to the RICO and common law fraud claims.

Further, the Defendants cite *Sneyd v. International Paper Co., Inc.*, 142 F.Supp.2d 819, 823 (E.D.Mich.2001) (Gadola, J.), where the court included reliance as an element that must be proven to demonstrate fraudulent omission under Michigan law.

After reviewing the case law, the Court agrees with Defendants that the *Affiliated Ute* presumption does not apply to the type of fraud alleged here, and, under Michigan law, reliance is an element of fraudulent omission claims.

## 2) *No Damages*

Defendants' damages argument is directed at Counts I, II, III and IV, the RICO, MCPA, fraudulent omission, and fraudulent inducement claims, respectively. The Defendants assert that Plaintiff declared under penalty of perjury in a bankruptcy proceeding that she had no "[c]hecking, savings or other financial accounts" (D's App. at 53). Because bankruptcy debtors have an affirmative duty to disclose all of their assets, and Plaintiff failed to do so, Defendants argue that Plaintiff is now judicially estopped from claiming that the money in the account is hers, leaving her without any damages.[8] *See Warda v. Commissioner of Internal Revenue*, 15 F.3d 533, 538 (6th Cir.1994).

Plaintiff responds that judicial estoppel should not apply because it was merely an "inadvertent failure to disclose a *de minimis* 'joint' asset" (P's brief at 14). The purpose of judicial estoppel is to "preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d

8. Defendants also assert that Plaintiff does not have standing because the money in the account was not hers. In support, Defendants cite Plaintiff's deposition, where she admitted that the money in the account was her grandmother's, and she merely wrote checks from the account. Plaintiff counters that she has standing because both names were on the account, and Plaintiff is the one that Defendant called for the telemarketing activity.

Both parties agree that the account was a joint account. The Court concludes that, as a joint account holder, Plaintiff had control over the account and the ability to authorize a monthly withdrawal of insurance premiums. Thus, she has standing. (The Court notes that Defendants' argument is odd because, taken to its logical conclusion, Defendants are asserting that they took the premiums out of the account without authorization, which would entitle Plaintiff to a refund).

1214, 1218 (6th Cir.1990). The Sixth Circuit has recently found that "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir.2002).

In *Browning*, the plaintiff failed to disclose a legal malpractice claim, even though the plaintiff was aware it. The court found it significant that plaintiff received no "windfall" from the failure to disclose; if plaintiff were to recover on the legal malpractice claim, the money would simply go to plaintiff's creditors. *Id.* The Sixth Circuit concluded that plaintiff had "no motive for concealment," so judicial estoppel did not apply. *Id.*

Plaintiff argues that, under the reasoning of *Browning*, judicial estoppel should not apply because Defendants have not put forth any proof that failure to list the account was anything other than mistake or inadvertence. *Id.* ("This lack of motive for concealment leads to the conclusion that [plaintiff's] failure was, without any evidence to the contrary, inadvertent.").

Defendants counter that it was central to the Sixth Circuit's analysis in *Browning* that the *Browning* plaintiff did not receive a windfall from the non-disclosure. By contrast, Plaintiff kept the money she did not disclose, so she is receiving a windfall—"hav[ing her] cake and eat[ing] it too"—just the situation judicial estoppel was intended to prevent.

Plaintiff responds that the mistake was not a windfall because it did not materially affect the outcome of the bankruptcy proceeding. In bankruptcy proceedings, debtors are entitled to exempt several thousand dollars of personal property, *see* 11 U.S.C. § 522, and Plaintiff only claimed

about $500 in exemptions. The approximately $800 in the account would not have put her over the statutory threshold.[9] Thus, there was no motive for Plaintiff to conceal the account because the money would have remained hers anyway; like the *Browning* plaintiff, Ms. McClain received no windfall from her omission.

The Court is persuaded that even if Plaintiff had disclosed the account, she would have been allowed to keep the money as a personal property exemption. Thus, the Court agrees with Plaintiff that the failure to disclose the account did not result in a windfall, and, under *Browning*, judicial estoppel does not apply. Defendant's Motion for Summary Judgment is DENIED on this ground.

### 3) *Causation*

Defendants claim there is no causation for Plaintiff's Counts I, II, III, and IV. Defendants' argument is that there is no causation is, once again, based on Plaintiff's deposition testimony that she did not buy the insurance. However, as explained above in Section IV.B.1, there is conflicting testimony on this point. Thus, whether the alleged fraudulent representations or omissions caused Plaintiff's purchase depends upon whether the jury believes she did not buy the insurance in the first place (her deposition), or she only bought it because she thought it was free (her affidavit). If it is the latter, then Plaintiff will have demonstrated causation. Consequently, as above, the Court concludes this is a genuine issue of material fact for the jury. Summary judgment is DENIED on this ground.

---

**9.** The numbers cited are the ones put forth by Plaintiff's counsel at oral argument, because Defendants neither disputed the $800 figure, nor the assertion that the $800 would not have placed Plaintiff over the statutory ex-

emption for personal property. However, if Defendants later discover that Plaintiff did receive a windfall from her failure to disclose the account, the Court is willing to revisit its ruling on this point.

*4) Unjust Enrichment*

 To state an unjust enrichment claim, Plaintiff must allege receipt of a benefit by the defendant from the plaintiff. *Barber v. SMH (US), Inc.*, 202 Mich.App. 366, 375, 509 N.W.2d 791 (1993).[10] Defendants agree that the benefit to them was the insurance premium money it collected, but they argue that the benefit was not received from the Plaintiff since the money in the account did not belong to her.

This is just another form of the lack of damages argument from Section IV.B.2, where the Court found Plaintiff is not judicially estopped from claiming the money in the account is hers. Thus, for the same reasons stated above, summary judgment is DENIED on this count.

*6) Civil Conspiracy*

The parties agree that this claim survives if the other counts do. Since summary judgment was denied on the other counts, summary judgment on the civil conspiracy count is also DENIED.

## V. CONCLUSION

For the reasons stated above,

1) Defendants' Motion to Dismiss [97–1] is DENIED IN PART on the RICO claim, GRANTED IN PART on the breach of contract claim (Count VII), and GRANTED IN PART on the MCPA claim without prejudice to Plaintiff filing a Fourth Amended Complaint. The Plaintiff's amendments should only address paragraphs 29, 32, 35, 37, 40, 41, 42, 108 and possibly 33 and 36.

2) Defendants' Motion for Summary Judgment [101–1] is DENIED.

---

**10.** Michigan law also requires proof of a second prong, "an inequity resulting to plaintiff because of the retention of the benefit by defendant," *Barber,* 202 Mich.App. at 375, 509 N.W.2d 791, but since neither party mentions this prong, it does not appear to be in dispute.