Susan F. WINTERS, Plaintiff,

v.

THE INVESTMENT SAVINGS PLAN FOR EMPLOYEES OF KNIGHT–RIDDER, INC. and Certain Subsidiaries Of Knight Ridder, Inc., Walter J. Kutrip, Philadelphia Newspapers, Inc., Mary Agnes Frangipanni Patel, Dechert, Jennifer R. Clarke, and Gary L. Borger, Defendants.

No. CIV. A. 01–1723.

United States District Court, E.D. Pennsylvania.

Aug. 13, 2001.

C. George Milner, III, Embery, Outterson & Fuges, Rockledge, PA, for plaintiff.

M. Frances Ryan, Matthew Lee Wiener, Dechert, Price & Rhoads, Philadelphia, PA, for Walter J. Kutrip, Philadelphia Newspapers, Inc., Dechert, Jennifer R. Clarke, Investment Savings Plan for Employees of Knight–Ridder, Inc., defendants.

M. Frances Ryan, Matthew Lee Wiener, Dechert, Price & Rhoads, Philadelphia, PA, G. Alexander Bochetto, Bochetto and Lentz, P.C., Philadelphia, PA, for MaryAgnes Frangipanni Patel, defendant.

Jeffrey B. Mc Carron, Philadelphia, PA, for Gary L. Borger, defendant.

## *MEMORANDUM*

NEWCOMER, Senior District Judge.

Currently before the Court are two Motions to Dismiss and plaintiff's response thereto.

## I. *BACKGROUND*

Plaintiff, Susan F. Winters, has filed this suit against defendants The Investment

Savings Plan for Employees of Knight Ridder ("the Plan"), Philadelphia Newspapers, Inc. ("PNI"), Walter J. Kutrip ("Kutrip"), Mary Agnes Frangipanni Patel ("Frangipanni"), Dechert, Jennifer R. Clarke ("Clarke"), and Gary L. Borger ("Borger") alleging that the Plan, PNI and Kutrip unlawfully paid the late Ron Patel's ("Patel") 401(k) benefits to Frangiapanni, with the assistance of Dechert attorney Clarke, in violation of plaintiff's rights under a Judgment of Divorce and Stipulation of Settlement between plaintiff and her ex-husband Patel and 29 U.S.C. § 1132 ("ERISA"). Plaintiff further alleges that the defendants all committed a fraud upon her when they deliberately concealed the ERISA violations.

Plaintiff Winters, a resident of Long Boat Key, Florida, married the late Ron Patel on November 16, 1982. At all times relevant to this suit, Patel was an editor for *The Philadelphia Inquirer*, a newspaper owned by defendant PNI, and was a participant in PNI's 401k plan.

While married, Patel named plaintiff as the beneficiary of his 401(k) plan. However, in March 1997, Patel told plaintiff that he was having an extramarital affair with defendant Frangipanni, and wanted to divorce plaintiff. Then, the *Philadelphia Daily News*, a newspaper also owned by PNI, published an article about Patel's relationship with Frangipanni. As a result of that article, plaintiff sued PNI for invasion of privacy in the Philadelphia Court of Common Pleas. Defendant Dechert represented PNI in that suit, and defendant Clarke served as lead counsel.

Meanwhile, in March, 1997, Winters and Patel began divorce proceedings where Winters was represented by Gary Borger, one of the defendants in this case. Borger requested information from PNI about obtaining a Qualified Domestic Relations Order ("QDRO"). With a QDRO, a portion of an employee's interest in a 401k may be transferred for the benefit of a former spouse and is governed by 29 U.S.C. § 1002.

On January 7, 1999, the divorce action concluded with a settlement and the entry of a Judgment of Divorce and Stipulation of Settlement. That Judgment required Patel to make the following payments to Winters: 1) 13,000 on or before January 30, 1999; 2) $10,000 on or before January 30, 2000; 3) $20,000 on or before January 30, 2001; and 4) $100,000 on or before June 1, 2001. Further, the second, and fourth payments just listed were secured by Patel's 401k plan, and he was required to keep a minimum balance in his 401k plan of $100,000 until January 1, 2001 and $130,000 after that date. Additionally, the Judgment required Patel to provide and pay for a life insurance policy with plaintiff named as a beneficiary. The Judgment required the policy to be sufficient to satisfy the payments Patel was obligated to pay plaintiff under the Judgment.

In March 1999, Patel and Frangipanni married. Soon thereafter, Patel changed the beneficiary of his 401k to Frangipanni, allegedly in violation of the divorce terms. On January 7, 2000, Patel died, and Frangipani rolled the 401k benefits into her own account, also allegedly in violation of the divorce terms.

Just over one year later, in May 2000, the parties to the invasion of privacy action settled, and executed a settlement and release agreement (the "agreement"). The agreement contains the following relevant provision:

*Releases by Susan Winters.* Susan Winters, and her heirs … do hereby remise, release, and forever discharge Philadelphia Newspapers, Inc., Stu Bykofsky, Metroweek Corporation, Scott Farmelant, Metro Corp., Ben Wallace, Ron Patel, and Mary Patel and each of their respective past, present and future

heirs, executors, personal representatives, administrators, general partners, limited partners, shareholders, agents, directors, officers, employees, attorneys, insurers, predecessors, successors, affiliates, divisions, subsidiaries, and assigns, and all persons, partnerships, corporations and other entities who might be claimed to be jointly and severally liable with them ... of and from all, and all manner of, claims actions and causes of action, suits, debts, damages, costs, expenses, compensation, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever whether arising in law or equity, in contract or tort, including but not limited to, all claims set forth or which could have been set forth arising from or with respect to ... *Susan Winters v. Philadelphia Newspapers, Inc., et al.,* [and several newspaper columns] ..., which she ever had, now has, or which her heirs, executors, administrators, attorneys, successors or assigns, or any of them, or any other person or entity claiming by, through or under he, hereafter can, shall or may have, for, or by reason of any cause, matter or thing whatsoever, whether known or unknown against Releases from the beginning of the world to the date of these presents. The Releasing Parties agree not to sue the Releasees at any time in the future on any of the claims released in this paragraph.

Currently before the Court are two Motions to Dismiss, one filed by defendants the Plan, Kutrip, PNI, Dechert and Clarke, and a second filed by Frangipanni. Accordingly, the Court now turns to defendants' Motions.

## II. DISCUSSION

### A. Legal Standard

When evaluating a Motion to Dismiss pursuant to Federal Rule of Civil Proce-

dure 12(b)(6), the Court must accept each allegation in a well pleaded complaint as true. *See Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Additionally, a Motion to Dismiss should only be granted if the Court finds that no proven set of facts would entitle the plaintiff to recovery under the filed pleadings. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

It is also firmly established that in reviewing a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must draw all reasonable inferences in the plaintiff's favor. *See Schrob v. Catterson,* 948 F.2d 1402, 1405 (3rd Cir.1991).

### B. Release of Claims Under the Agreement

■ Under Pennsylvania law, a release that bars unknown claims will be enforced, even if a party claims that it was unaware of the matter at the time the release was executed. *See, e.g., Bickings v. Bethlehem Lukens Plate,* 82 F.Supp.2d 402, 409 (E.D.Pa.2000).

■ The plaintiff first asserts that the agreement covers only the privacy action, and that this case does not concern that action. However, upon a review of plaintiff's Complaint, the Court disagrees. Plaintiff's release states expressly that it covers "claims set forth or which could have been set forth or arising from or with respect to" the privacy action. Further, that release covered claims "known or unknown." Counts two, four, five and six all concern allegations of defendants' fraudulent conduct during the settlement of the privacy action. However, under the terms of the agreement, plaintiff has waived these claims because although unknown, plaintiff could have made a claim

for fraud during the privacy suit. Moreover, plaintiff's contention that defendants' committed fraudulent acts to facilitate a settlement in the privacy action only demonstrates that the fraudulent conduct arose from the privacy action. Thus, according to the agreement, plaintiff's claim of fraud has been waived.

■ Plaintiff also contends that the agreement does not cover the Plan or Dechert. However, the agreement sweeps broadly, and expressly covers not only PNI's attorneys, but also any "persons, partnerships, corporations, and other entities who might be claimed to be jointly and severally liable with" PNI. This language covers the Plan and Dechert, as Dechert represented PNI in the privacy action, and the Plan is at least an entity within the meaning of the agreement.

■ Plaintiff also argues that the agreement was procured by fraud, and that plaintiff did not believe the agreement would cover claims associated with the 401k plan when she signed it. In Pennsylvania, the parol evidence rule bars claims of fraud in the inducement and only allows claims of fraud in the execution. *See Dayhoff, Inc. v. H.J. Heinz, Co.,* 86 F.3d 1287, 1300 (3d Cir.1996). Thus, a party may not assert that it was induced to enter a contract by fraudulent misrepresentation. *See Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.,* 94 F.Supp.2d 589, 592 (E.D.Pa.1999). Further, the agreement states that "this agreement constitutes the entire Agreement between the Parties."

Here, plaintiff's argument that she was fraudulently induced into signing the agreement is barred by the parol evidence rule, and the Court cannot consider it.

■ In addition, plaintiff has waived her claim of fraud. When a release is procured by fraud, a party may either (1) disaffirm the release and offer to return the consideration; or (2) affirm the voidable contract and waive the fraud. *See, e.g., Nocito v. Lanuitti,* 402 Pa. 288, 167 A.2d 262, 263. Failure to tender back the consideration after discovery of the alleged fraud constitutes an affirmance of the contract. *See id.* In this case, plaintiff does not contend that she has offered to return the consideration supporting the agreement.

## C. Whether the Divorce Judgment is a QDRO

Defendants the Plan, Kutrip, PNI, Dechert and Clarke also move to dismiss plaintiff's ERISA's claims, counts one and two of plaintiff's Complaint.[1] In count one, plaintiff asks the Court to declare the January 7, 1999 Divorce Decree a Qualified Domestic Relations Order ("QDRO") within the meaning of 29 U.S.C. 1056.[2]

29 U.S.C. 1056(d)(3)(C) provides:

A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant

---

1. However, because the Court has already decided to dismiss count two, only count one is now before the Court.

2. A QDRO is a domestic relations order that "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan...." 29 U.S.C. § 1056(d)(3)(B)(i). QDROs are not preempt-

ed by ERISA in the sense that they may authorize the assignment or alienation of benefit plan monies, which cannot generally be accomplished under ERISA's anti-alienation provisions. *See Ablamis v. Roper,* 937 F.2d 1450, 1454 (9th Cir.1991). By contrast, domestic relations orders that are not "qualified" are subject to the anti-alienation provision. *See* 29 U.S.C. § 1056(d)(3)(A).

and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

■ The defendants argue that the Divorce Judgment here is not a QDRO because it: 1) does not set forth Patel's or Plaintiff's address; 2) does not set forth the amount of or percentage of Patel's benefits to be paid to plaintiff; 3) does not specify the number of payments or time period during which it applies. Plaintiff does not dispute that the Divorce Judgment fails to set forth plaintiff's or Patel's address.

While the Third Circuit has not decided whether a domestic relations order must set forth the above quoted specifications, it has recognized that "Congress has required QDRO's to be quite specific in order to convey ERISA benefits." *Samaroo v. Samaroo,* 193 F.3d 185, 187 n. 2 (3d Cir.1999). Moreover, this Court cannot ignore the strong language in 29 U.S.C. 1056(d)(3)(C) that a domestic relations order qualifies under the statute "only if such order clearly specifies" the required specifications. In the face of this language, the Court finds that the Divorce Judgment cannot be a QDRO, and will dismiss count one of plaintiff's Complaint.

### C. *Subject Matter Jurisdiction*

As this Court will order the dismissal of plaintiff's federal claims under ERISA, this case is no longer proper under 28 U.S.C. § 1331, the basis of jurisdiction plaintiff relies upon in his Amended Complaint. Thus, the remaining defendants shall be ordered to brief whether or not this Court should retain supplemental jurisdiction over plaintiff's state law claims before this Court resolves defendant Frangipanni's Motion to Dismiss.

### ORDER

AND NOW, this 8th day of August, 2001, the Court hereby ORDERS as follows:

1. Upon consideration of the Motion to Dismiss filed by defendants the Plan, Kutrip, PNI, Dechert and Clarke said Motion if GRANTED. Accordingly, plaintiffs' Complaint, namely counts one, two, four, five, and six, against those defendants of DISMISSED WITH PREJUDICE, and Judgment is ENTERED in favor of those defendants and against plaintiff.

2. Defendant Frangipanni's Motion to Dismiss is DENIED for the time being pending Compliance by plaintiff, Frangipanni, and defendant Borge with the following: Said parties shall file briefs no to exceed six (6) pages addressing whether this Court should exercise its supplemental jurisdiction over the remaining counts in plaintiff's Complaint. Said briefs shall be submitted by Wednesday, August 15, 2001.

AND IT IS SO ORDERED.