**GREYLOCK ARMS, INC., Appellant**

v.

**Harvey E. KROIZ, Irwin Kroiz, and Harvey E. Kroiz and Irwin Kroiz, trading as Republic Airport Road Partnership, and Triangle Building Supplies & Lumber Co.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 2005.

Decided July 26, 2005.

Reargument Denied Sept. 23, 2005.

10. *McCauley v. Imperial Woolen Co.,* 261 Pa. 312, 104 A. 617 (1918).

Edward Fackenthal, Norristown, for appellant.

Marvin L. Wilenzik, Blue Bell, for appellees.

BEFORE: COLINS, President Judge, McGINLEY, Judge, and SIMPSON, Judge.

OPINION BY President Judge COLINS.

This is an appeal from the Court of Common Pleas of Montgomery County (trial court). Initially, the appeal was before the Superior Court, but was transferred by that court upon a finding that the controlling issue required analysis under the Pennsylvania Municipalities Planning Code (MPC)[1] and local zoning ordinances. The trial court denied Greylock Arms, Inc.'s (Greylock) Motion for Judgment Notwithstanding the Verdict and granted Kroiz's (Republic) Motion to Amend the February 18, 2003 order increasing the amount of damages to Republic. We affirm.[2]

This case arises from a dispute involving a 10-year renewable lease entered into in 1987. Greylock owns a parcel of land upon which a shopping center has been in existence since the 1960s. Greylock agreed to lease a 5-acre portion of its lot to Republic with the understanding that Republic intended to demolish existing buildings on the premises and construct another shopping center that would include a Triangle home improvement warehouse store. The lease was later amended to allow for a retail store of any kind or any other permitted use under the zoning ordinance. In 1988, disputes arose under the amended lease where Republic contended that in addition to the development plans already

---

1. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11005.

2. This Court's standard of review of the trial court's denial of post-trial relief is limited to determining whether the trial court abused its discretion or committed an error of law. *Koter v. Cosgrove*, 844 A.2d 29 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 579 Pa. 713, 858 A.2d 111 (2004).

approved by the municipality, a land subdivision plan was required. Republic requested that Greylock join in its subdivision application pursuant to the lease's cooperation clause before it would commence construction and begin to pay rent on the lease. Greylock refused, demanding that Republic withdraw the amended lease and allow the original ground lease to control and construct a Triangle store. When Republic insisted that subdivision approval was necessary before any specific construction plans could be approved by its lender, Greylock sued Republic for breach of the lease agreement. Greylock lost at the bench trial, and Republic's counterclaim was also denied initially. Greylock then made a Motion for Judgment Notwithstanding the Verdict that was denied. Republic's Motion for Post–Trial Relief was granted, and a verdict in favor of Republic's counterclaim was entered that reversed the earlier denial.

The damages were based upon refund of the $150,000.00 security deposit and $101,638.00 of other funds expended in reliance on the lease agreement. The trial court thereby awarded a total of $251,638.00 to Republic, which amount combined with $212,634.00 of interest at the rate of 6% came to an award of $464,262.00 in damages. On appeal, the parties raise five issues.

■ The first issue is whether the local ordinances of Allentown or the MPC require subdivision approval where an existing shopping center leases part of its lot for the construction of another commercial use intended to be an additional shopping center. The definitions of "land development," "subdivision," and "lot" under the Allentown Zoning Ordinance neither require nor prohibit the use of subdivision on their face.[3] The same is true of the definitions under the MPC.[4] However, in the

3. (w) Land Development. (1) the improvement of one or two (2) or more contiguous lots, tracts, or parcels of land for any purpose involving: (a) a group of two (2) or more buildings, or (b) the division or allocation of land or space between or among two (2) or more existing · or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups, or other features, or (c) a proposed single-lot, single-structure development where, in the opinion of the Planning Director, the impact an intensity of the land development warrants review by the Allentown City Planning Commission.

. . .

(2) a subdivision of land.

. . .

(x) Lot. A tract, plot, or portion of a land development or other parcel of land intended as a unit for the purpose of transfer of ownership or building development.

. . .

(aaa) Subdivision. The division of a single lot, tract, or parcel of land, or a part thereof, into two (2) or more lots, sites and other divisions of land or the combining of two (2) or more tracts or parcels of land for the purpose, whether immediate or future, of transfer of ownership, lease or building development, with appurtenant roads, streets, lanes, alleys, and ways dedicated or intended to be dedicated to public use, or the use of purchasers or owners of lots fronting thereon, including but not limited to, all designation in street lines, public area boundaries, lot lines, easements, rights-of-way, pavement widths, curb lines, location and size of utilities, location and size of areas to be dedicated. Subdivision also includes resubdivision of an existing subdivision."
(Ord. 12779 § 2. Passed 7–15–87.)

4. "Land development," any of the following activities:

(1) The improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving:
(i) a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure; or
(ii) the division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or

context of the facts in this case, Greylock has not rebutted Republic's reasons for seeking subdivision. First, Greylock's principal was listed as owner and developer on the Development Plan when Republic was the builder. (Trial Court Finding of Fact No. 45). This is a factual misstatement in the Development Plan that could have altered whether it was approved. Second, the plan failed to define the ground lease, because there was no lease line in the plan. (Trial Court Finding of Fact No. 38). Third, Republic's lenders needed subdivision to protect their investments. All of the above were legitimate issues for Republic to seek subdivision to remedy. Indeed, the evidence of record, particularly the expert testimony, supports the trial court's finding that subdivision was both a simple and preferable solution to Republic's concerns for all parties. (Trial Court Finding of Fact No. 39 and Conclusion of Law No. 12). The trial court is correct that Greylock's failure to cooperate in Republic's reasonable request to seek subdivision was a breach of the cooperation clause of the lease agreement. (Trial Court Conclusion of Law No. 14). Further, the trial court's conclusion that subdivision would be required if Republic had constructed a building on the leased property is also supported by substantial evidence which is adequately explained in the opinion of the Honorable Arthur R. Tilson. (Trial Court Opinion, pp. 5–6). Substantial evidence is such evidence that a reasonable person would consider adequate to support the finding. *Snyder v. State Ethics Commission*, 686 A.2d 843 (Pa.Cmwlth.1996).

■ The second issue is whether Greylock was required to provide Republic with a default notice and opportunity to cure, prior to filing suit for breach of contract. Republic's action did not amount to an anticipatory breach of the lease because it was not an absolute and unequivocal refusal to perform, the requirement for anticipatory breach. *2401 Pennsylvania Avenue Corp. v. Federation of Jewish Agencies of Greater Philadelphia*, 507 Pa. 166, 172, 489 A.2d 733, 736 (1985). Republic maintained throughout that it could and wished to perform so long as property lines were re-configured to the satisfaction of its lenders and the zoning ordinances of Allentown. Rather than notify Republic that Greylock regarded seeking subdivision as default and providing Republic an opportunity to cure, Greylock simply filed suit. Consequently, Greylock, and not Republic, was the party that terminated the lease. Greylock contends that providing notice of default would have been in vain and, based upon this conjecture, feels there was no duty to provide notice. We disagree. Republic

prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.

(2) A subdivision of land.

(3) Development in accordance with section 503(1.1).

. . .

"Lot," a designated parcel, tract or area of land established by a plat or otherwise as permitted by law and to be used, developed or built upon as a unit.

. . .

"Subdivision," the division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development: Provided, however, That the subdivision by lease of land for agricultural purposes into parcels of more than ten acres, not involving any new street or easement of access or any residential dwelling, shall be exempted.

MPC Section 109, 53 P.S. § 10107.

did not repudiate the lease; Republic sought subdivision as a means to perform under the lease. That Greylock did not wish to subdivide was not a means of making Republic's actions a repudiation of the lease. Indeed, the Court notes that the Ground Lease itself contains multiple references to giving notice to the other party if one party were to seek termination of the lease.

■ The third issue is whether language in the lease was ambiguous as to Republic's alleged duty to construct a 60,-000–square–foot building. The language in the lease was unambiguous. Section 7.1 of Article VII of the Ground Lease, entitled "Lessee's Improvements," states in relevant part, "Lessee *may*, but, subject to the provisions of Section 5.5,[5] *shall not be required* to, construct a building containing a rentable floor area of approximately 60,-000 square feet and other improvements on the Premises...." (Emphasis added.) Republic was permitted, *not required*, to construct such a building. Greylock's arguments to the contrary are without merit as we shall discuss below.

Greylock argues that Section 5.4 of Article V, entitled "Delivery of Possession," constitutes a duty-to-build clause. Section 5.4 of the Ground Lease states that upon delivery of possession, "Lessee shall be entitled to demolish the existing building on the Premises and shall thereafter promptly and diligently pursue construction of the Improvements as set forth in Article VII." As discussed above, the language in Article VII was permissive and not mandatory. In addition, Section 5.4 creates a duty only if Republic demolished the existing buildings on the lot, which under section 5.4 is permissive and not mandatory at any rate. Republic never demolished any buildings, and no duty was activated thereby.

■ Fourth, was it proper for the trial court to base Greylock's liability, in part, upon Greylock's failure to prove commercial fraud in Republic's obtaining an amendment to the ground lease from Greylock? It was not proper for the trial court to consider Grelock's failure to prove fraud in the inducement to amend the ground lease. The ground lease contained an integration clause in Article XXVI, Section 26.5, entitled "Entire Agreement." Greylock correctly points out that the parol evidence rule bars proof of fraudulent inducement to a contract where the contract is fully integrated. *1726 Cherry Street Partnership v. Bell Atlantic Properties, Inc.*, 439 Pa.Super. 141, 653 A.2d 663, *petition for allowance of appeal denied*, 544 Pa. 647, 664 A.2d 976 (1995). The amended lease did not alter the integration clause. The issue of fraud is irrelevant, and we do not affirm on this ground.

The final issue is whether Republic proved its damages at trial. The record reflects that Republic did prove its damages at trial. Greylock did not dispute the proffered expenses evidence when offered at trial. In its brief Greylock admits that it stipulated that if Republic's principal had testified he would have supported the listing of expenses submitted at trial in Defendants' Exhibit 40. (Brief for Appellant, p. 44). Greylock nevertheless complains that Republic's principal did not testify. *Id.* Yet, Greylock admits in its brief that "Lessee proved the amount of expenses." *Id.* Greylock cannot credibly maintain, then, that Republic failed to prove its damages when it stipulated to the

---

5. Section 5.5 deals with termination rights if certain completion deadlines were not met; it creates no duty to build.

evidence and admitted that the expenses were proven at trial in its brief.

Accordingly, the orders of the trial court are affirmed.

### ORDER

AND NOW, this 26th day of July 2005, the orders of the Court of Common Pleas of Montgomery County are affirmed.