**Douglas E. WALL, Plaintiff–Appellant,**

v.

**CSX TRANSPORTATION, INC. and Consolidated Rail Corporation, Defendants–Appellees.**

**Docket No. 05–4065–CV.**

United States Court of Appeals, Second Circuit.

Argued March 23, 2006.

Decided Dec. 14, 2006,

Andrew C. Kelly, Jordan & Kelly LLC, Greenwich, NY, for Plaintiff–Appellant.

Ronald M. Johnson, Alan D. Cohn, Akin Gump Strauss Hauer & Feld, LLP, Washington, DC, for Defendants–Appellees.

Before STRAUB and SACK, Circuit Judges, TRAGER, District Judge.[*]

TRAGER, District Judge.

Plaintiff-appellant, Douglas Wall ("Wall"), appeals from a June 9, 2005 judgment of the United States District Court for the Southern District of New York (Daniels, J.), *Wall v. Consolidated Rail Corp.*, No. 02–7924, 2005 WL 1384024 (S.D.N.Y. June 9, 2005), adopting the March 31, 2005 Report and Recommendation ("Report") of Magistrate Judge Michael H. Dolinger granting defendants-appellees CSX Transportation, Inc. and Conrail, Inc.'s (collectively, "Conrail") motion to dismiss complaint and denying leave to replead. Wall brought this diversity action pursuant to 28 U.S.C. § 1332, alleging that Conrail, his former employer, fraudulently induced him to enter a settlement agreement resolving an administrative complaint that Wall had filed against Conrail for alleged retaliation.

## Background

Douglas Wall, a Connecticut resident, was hired by Conrail as a brakeman in 1987 and was promoted to conductor in early 1988. He was certified as a locomotive engineer in March 1989 and continued working for Conrail in that capacity until February 1998. He worked primarily in New York.

On December 1, 1995, a Conrail train derailed in Yonkers, New York. The next morning, according to Wall's allegations, Conrail re-railed the train, but without the assistance of a certified locomotive engineer, which Wall maintains was in violation of Federal Railroad Administration regulations and the company's collective bargaining agreement with the International Brotherhood of Locomotive Engineers ("BLE"), of which Wall was a member. At the instruction of the BLE chairman, Wall videotaped the re-railing process.

Following the videotaping incident, Wall asserts, he suffered harassment at the hands of Conrail District Superintendent Jerome Mullen and others. In response to the harassment, a second union to which Wall belonged, the United Transportation Union ("UTU"), filed an administrative complaint on Wall's behalf under the Federal Rail Safety Act ("FRSA"). On the morning that his claim was scheduled to be heard, in Philadelphia, Pennsylvania, the parties reached an oral resolution of the matter, negotiated by Wall's own attorney, by the attorney and chairman of the UTU, and by Conrail's in-house counsel.

According to Wall, he was fraudulently induced to resign from Conrail, sign a settlement agreement and release, and discontinue an action that he had brought against Conrail which was then pending in

---

[*] The Honorable David G. Trager of the United States District Court for the Eastern District of New York, sitting by designation.

New York State Supreme Court. The inducement for these concessions was an oral agreement that: (1) Conrail would facilitate Wall's employment as a locomotive engineer at Amtrak; (2) Conrail would always provide Wall's prospective employers with a neutral job reference; and (3) Conrail would never interfere with Wall's employment relationships. Wall alleges that these promises by Conrail were false and known to be false at the time they were made. In reliance on the promises made by Conrail, Wall discontinued an unrelated personal injury case and executed a settlement agreement and release.

The settlement agreement and release did not mention any obligations on the part of Conrail with respect to Wall's efforts to secure future employment with another employer, but simply provided, among other things, that: (1) Wall would resign from Conrail and never seek employment with Conrail or its successors again; (2) Wall would release Conrail from all claims; and (3) Conrail would pay Wall $20,000 after taxes. Significantly, the settlement agreement did not contain an integration or merger clause.

After resigning from Conrail, Wall sought employment from Amtrak and, later, from other railroads, but was not hired.[1] He alleges on information and belief that Mullen or others at Conrail gave Amtrak "a very negative job reference" less than three months after promising to give a neutral reference, and that this negative reference cost him what would

otherwise have been a strong chance of employment at Amtrak.

In October 2002 plaintiff brought this diversity action alleging fraud in the inducement and breach of contract claims, and amended his complaint in December 2002.[2] Defendants moved to dismiss on February 13, 2003. Plaintiff opposed and sought leave to file a second amended complaint. Plaintiff subsequently agreed to the dismissal of his breach of contract claim, leaving only the fraud in the inducement claim. The motions were referred to the Magistrate Judge, who issued a report and recommendation on March 31, 2005 concluding that plaintiff's fraud in the inducement claim was not preempted by the Federal Railway Safety Act ("FRSA"), but that he failed to state a for which relief could be granted, whether analyzed under New York or Pennsylvania law. Magistrate Judge Dolinger recommended dismissal of plaintiff's claims and denial of plaintiff's motion to amend.

Both parties filed objections to the Report and Recommendation, and on June 8, 2005, the district court adopted the recommendations of the Magistrate Judge, dismissing the amended complaint and denying plaintiff leave to file a second amended complaint, but did not separately address the issue of preemption. Plaintiff filed a timely notice of appeal.

We now vacate the district court's decision and hold that plaintiff's claim is viable under both New York and Pennsylvania

1. Wall did secure a position in 1998 with Union Pacific in Nebraska after not listing Conrail as a former employer on his application. However, in 1999 Wall returned to Connecticut when his mother-in-law was diagnosed with a terminal illness and applied for a position with Norfolk and Southern Railroad ("N & S"), listing Conrail as a former employer. He gave up his position with Union Pacific in the belief that he would be hired by N & S, but he was not offered a

position, even after receiving initially encouraging signs that he would be hired. Wall alleges that Mullen sabotaged his opportunity at N & S by giving him a negative reference.

2. The amended complaint differs from the original only in its recitation of the parties, and contains no changes that are relevant here.

law and that his claim, as presently stated, is not preempted by the FRSA. We remand to the district court for further proceedings.

## Discussion

### (1)

### Conflict of Laws

■ In diversity cases, federal courts look to the laws of the forum state in deciding issues regarding conflicts of law. *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir.1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). As this case was brought in the Southern District of New York, New York law will apply for purposes of determining which state's substantive law should govern the dispute. *Id.*

Plaintiff argues that New York law should control because the job from which he was induced to resign by the fraud was located in New York. Defendants, in turn, argue that plaintiff's claim for fraudulent inducement fails under both Pennsylvania and New York law.

Under New York's conflict of laws approach, the New York Court of Appeals has held that "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223, 613 N.E.2d 936, 937, 597 N.Y.S.2d 904, 905 (1993). Specifically, we analyze whether the two states—New York and Pennsylvania [3]— differ regarding the viability of a fraud in the inducement claim where the subject matter of the alleged misrepresentation is not addressed in the contract and where the contract the plaintiff was allegedly induced to enter does not contain a merger, or integration, clause.[4] Although Pennsylvania case law on this point is difficult to navigate, and under one line of Pennsylvania cases the law would differ from that of New York, we ultimately conclude that the laws do not differ as they apply to the facts of this case.

### a. New York law

■ Proof of fraud under New York law requires a showing that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the

3. There is also Connecticut which, as plaintiff's domicile, is another obvious possibility for governing law. See *Klock v. Lehman Bros. Kuhn Loeb Inc.*, 584 F.Supp. 210, 215 (S.D.N.Y.1984) (holding that a Connecticut resident's fraud claims accrued in Connecticut, because "[t]o the extent plaintiff became a poorer man, he became a poorer Connecticut resident"). Wall never argued for the applicability of Connecticut law, although it would appear to have been even more favorable to him. See, e.g., *Harold Cohn & Co., Inc. v. Harco Int'l, LLC*, 72 Conn.App. 43, 50, 804 A.2d 218, 223 (Conn.App.Ct.2002) ("A defrauded party has the option of seeking rescission or enforcement of the contract and damages."); *A. Sangivanni & Sons v. F.M. Floryan & Co.*, 158 Conn. 467, 472, 262 A.2d 159 (1969) ("Fraud in the inducement of a contract ordinarily renders the contract mere-

ly voidable at the option of the defrauded party, who also has the choice of affirming the contract and suing for damages.").

4. Both New York and Pennsylvania cases appear to use the terms "merger clause" and "integration clause" interchangeably. See, e.g., *Primex Int'l Corp. v. Wal–Mart Stores, Inc.*, 89 N.Y.2d 594, 596, 679 N.E.2d 624, 625, 657 N.Y.S.2d 385, 386 (1997) ("In addition, the 1990 Agreement contained a general merger or integration clause."); *Den–Tal–Ez, Inc. v. Siemens Capital Corp.*, 389 Pa.Super. 219, 566 A.2d 1214, 1222 (Pa.Super.1989) ("Appellants also point to the merger or integration clause in the Agreement, which basically states that the Agreement represents the entire agreement of the parties with regard to the subject matter thereof.").

plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir.1996) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995) (internal quotation marks omitted)); *see also Vermeer Owners, Inc. v. Guterman*, 78 N.Y.2d 1114, 1116, 585 N.E.2d 377, 378, 578 N.Y.S.2d 128, 129 (1991) (holding that a fraud action requires proof of "a representation of material fact, falsity, scienter, reliance and injury"); *Ross v. DeLorenzo*, 28 A.D.3d 631, 636, 813 N.Y.S.2d 756, 760 (2d Dep't 2006).

The Magistrate Judge here correctly noted that "[a]s a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." Thus, "general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995). One reason for this rule is to prevent parties from avoiding the Statute of Frauds by recharacterizing their contract claims as torts. *See Lehman v. Dow Jones & Co.*, 783 F.2d 285, 294 (2d Cir.1986) (Friendly, J.) ("New York courts have made it clear that a plaintiff may not circumvent the Statute of Frauds ... by simply recasting his claim for breach of contract as an action for fraud.") (internal quotation marks omitted).

However, not every fraud claim is foreclosed in an action also involving a contract. New York law specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced. See *WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 528, 724 N.Y.S.2d 66 (2d Dep't 2001) ("[A] misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud."). Furthermore, a promise to take some future action which is collateral to the contract can be considered a "misrepresentation" for purposes of a fraud in the inducement cause of action. *See Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956, 502 N.E.2d 1003, 1004, 510 N.Y.S.2d 88, 89 (1986) (holding that "a promise [not contained in the written agreement] made with a preconceived and undisclosed intention of not performing it ... constitutes a misrepresentation" for purposes of a fraud in the inducement cause of action (quoting *Sabo v. Delman*, 3 N.Y.2d 155, 160, 143 N.E.2d 906, 908, 164 N.Y.S.2d 714, 716 (1957)) (internal quotation marks omitted)).

New York also permits the use of parol evidence to prove a claim of fraud in the inducement, even where the written contract contains an integration, or merger, clause. *Deerfield*, 68 N.Y.2d at 956, 502 N.E.2d at 1004, 510 N.Y.S.2d at 89; *Hobart v. Schuler*, 55 N.Y.2d 1023, 1024, 434 N.E.2d 715, 716, 449 N.Y.S.2d 479, 480 (1982) (commenting that even "a merger clause is generally insufficient to bar parol evidence of a fraudulent misrepresentation").[5]

---

**5.** New York law is not so liberal, however, as to permit parol evidence of fraudulent inducement to enter a contract in every situation. The New York Court of Appeals has foreclosed parol evidence where the contract includes a negotiated merger clause, *see Citibank v. Plapinger*, 66 N.Y.2d 90, 95, 485 N.E.2d 974, 976–77, 495 N.Y.S.2d 309, 311–12 (1985) (distinguishing between a negotiated merger clause—which would preclude parol evi-

▮ Thus, the only question as to the viability of Wall's claim under New York law is whether the oral representations were collateral to the written settlement agreement. The Magistrate Judge concluded, and the district court agreed, that "the alleged misrepresentations were not collateral or extraneous to the terms of the contract, but rather were directed precisely at those terms."[6] Report at 29. We disagree. A comparison of the alleged oral promises which preceded the written settlement and the written settlement itself reveals that they do not address common topics. Wall alleges that he entered into the settlement agreement in reliance on collateral promises from Conrail that it would provide him with at least neutral job references. The settlement agreement, by contrast, is silent on the issue of Wall's future prospects with other employers generally and job references specifically. Instead, the settlement agreement provides for Wall's separation from Conrail, Wall releasing Conrail from any claims, payment by Conrail of a severance and Conrail providing Wall with his engineering certification documents. Thus, the oral promises made by Conrail were sufficiently collateral to the terms of the settlement agreement to sustain a claim for fraud in the inducement under New York law. *See, e.g., Deerfield,* 68 N.Y.2d at 956, 502 N.E.2d at 1004, 510 N.Y.S.2d at 89 (affirming denial of motion to dismiss counterclaim for "fraud in the inducement in that plaintiff had no intention of abiding by the geographical restrictions orally agreed to"); *Hobart,* 55 N.Y.2d at 1024, 449 N.Y.S.2d 479, 434 N.E.2d at 716 (affirming denial of summary judgment in breach of contract action where claimant alleged that he was induced to purchase a business in reliance on a fraudulent statement of the business's income and noting that "the fraudulent representation which forms the basis of [the fraudulent inducement claim] is not specifically contradicted by any of the detailed representations or warranties contained in the [written] agreement"). Accordingly, under New York law, Wall's claim for fraudulent inducement is sufficient to survive a motion to dismiss.

### b. Pennsylvania law

▮ Wall's claim for fraudulent inducement is also sufficient under Pennsylvania law. The substantive elements of fraud under Pennsylvania law are the equivalent of those required by New York law:

(1) a representation; (2) which is material to the transaction at hand; (3) made

---

dence—and a standard form clause—which would not), or an explicit disclaimer regarding the same subject matter as the alleged oral representation, *see Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 320, 157 N.E.2d 597, 599, 184 N.Y.S.2d 599, 602 (1959) (holding that a plaintiff is precluded from relying on oral representations to establish fraudulent inducement to enter a contract where the contract contains a specific disclaimer that the plaintiff "is not relying on any representations as to the very matter as to which it now claims it was defrauded"). Neither type of disclaimer is present here.

**6.** Two pages later in his Report, when addressing Pennsylvania law, the Magistrate Judge reversed his position, stating: "In this case, the parties executed a written settlement agreement that did not contain the oral representations that plaintiff asserts were false." Report at 31. The district court, too, was inconsistent on this point, first stating that the Magistrate Judge "correctly found that the subject representations and promises were not extraneous and collateral from the parties' [written] agreement," and then, in that same paragraph, finding that "[t]he written Settlement and Release Agreement is silent with regard to Conrail's alleged additional oral representations and promises to facilitate plaintiff's employment with Amtrak, provide plaintiff with a neutral job reference, and not to interfere with plaintiff's employment relationships." *Wall,* 2005 WL 1384024, at *2

falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 538 Pa. 193, 207–08, 647 A.2d 882, 889 (1994).

### i. Pennsylvania's application of the parol evidence rule

■ Like New York, Pennsylvania law also recognizes a cause of action for fraud in the inducement, although its application of the parol evidence rule has engendered some conflicting views of its practical viability, particularly where the written contract is fully integrated.[7] The Pennsylvania Supreme Court has consistently applied the parol evidence rule to bar evidence of prior fraudulent representations only in cases involving written agreements that (1) contain terms that directly deal with the subject matter of the alleged oral representation and (2) represent the entire contract between the parties, particularly where the written agreement also contains an integration clause.[8] In *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 499–500, 854 A.2d 425, 438 (2004), the Pennsylvania Supreme Court applied the parol evidence rule to bar admission of any evidence of previous representations regarding the location of seats in a new stadium where the final agreement for season ticket subscriptions ("Stadium Builder Licenses") described a slightly different location of the seats. The court emphasized that, "[m]ost importantly, the SBL Agreement explicitly stated that it represented the

---

7. Some of the confusion surrounding Pennsylvania's application of the parol evidence rule in fraud cases may stem from its distinction between claims for fraud in the inducement and fraud in the execution. *See Youndt v. First Nat'l Bank of Allegany*, 868 A.2d 539, 546 (Pa.Super.Ct.2005) ("Whether parol evidence is admissible in proving a claim for fraud initially depends on the nature of the alleged fraud."). Pennsylvania law is permissive in allowing proof of claims of fraud in the execution, but applies the parol evidence rule to bar proof of claims for fraud in the inducement where the contract contains a merger clause, even if it was not negotiated, provided the alleged oral statements concern the same subject matter as the written agreement. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 499–500, 854 A.2d 425, 438 (2004). Some courts, however, in distinguishing application of the parol evidence rule in cases of fraud in the execution versus fraud in the inducement, have gone so far as to suggest that claims of the latter are barred by Pennsylvania law. *See, e.g., Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F.Supp.2d 589, 592 (E.D.Pa.1999) ("In Pennsylvania, it is now settled that the parol evidence rule bars claims of fraud in the inducement and only allows claims for fraud in the execution.").

8. In 1995, the Superior Court of Pennsylvania traced the history of the parol evidence rule in Pennsylvania as it applies to claims of fraud in the inducement. *1726 Cherry St. P'ship v. Bell Atlantic Props., Inc.*, 439 Pa.Super. 141, 653 A.2d 663, 666–67 (Pa.Super.Ct.1995). Since *1726 Cherry St.*, the Superior Court of Pennsylvania has applied the parol evidence rule to bar evidence of prior or contemporaneous representations that contradict the terms of the written agreement. *See Youndt*, 868 A.2d at 548–49 (barring evidence of alleged misrepresentation that "there were no problems" with property under contract for sale, where the contract "stated that it was the parties' whole agreement and that there were no representations ... made regarding the condition of the property"); *Blumenstock v. Gibson*, 811 A.2d 1029, 1038 (Pa.Super.Ct.2002) (holding that alleged statements by sellers of home that sump pumps had been installed in basement "as a precaution," thereby leading buyers to assume there was no water problem, were inadmissible, because the sump pumps were openly visible and the sale contract stated that the buyers had inspected the property and agreed to purchase it in its present condition).

parties' entire contract regarding the sale of SBLs." *Yocca,* 578 Pa. at 499–500, 854 A.2d at 438. *See also, HCB Contractors v. Liberty Place Hotel Assocs.,* 539 Pa. 395, 399, 652 A.2d 1278, 1279–80 (1995) (barring evidence of prior representations that "relate to subjects that were specifically addressed ·in the written contract" where the contract also contained an integration clause expressly overriding all prior oral representations).

Although the Pennsylvania Supreme Court has used explicit language in its opinions requiring both the elements of related subject matter and integration, it has only had occasion to decide cases in which the subject matter of the alleged misrepresentations was specifically addressed in the written agreement. At least two Pennsylvania intermediate appellate courts have gone further, and when faced with fraudulent inducement claims in which the alleged misrepresentations dealt with subject matter not addressed by the written agreements, have, nonetheless, barred evidence of the misrepresentations simply because the written agreements had integration clauses. In one case, the Superior Court held inadmissible parol evidence that a lending bank knew that its borrower's customer was insolvent, but fraudulently withheld that information from the borrower, where the promissory note contained an integration clause. *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank,* 801 A.2d 1248, 1252 (Pa.Super.Ct.2002). In *Heritage,* there was no indication that the allegedly fraudulent representation (or, more accurately, omission) concerning the customer's solvency was specifically addressed in the promissory note. Similarly, the Pennsylvania Com-

monwealth Court [9] has stated that "the parol evidence rule bars proof of fraudulent inducement to a contract where the contract is fully integrated," without analyzing whether the written agreement specifically addressed the subject matter of the allegedly fraudulent statements. *Greylock Arms, Inc. v. Kroiz,* 879 A.2d 864, 868 (Pa.Commw.Ct.2005). These courts' applications of the parol evidence rule appear to be at odds with the rule set forth by the Pennsylvania Supreme Court insofar as they extend the parol evidence rule to bar evidence of statements unrelated to the subject matter of the written contracts. Neither case addressed the Pennsylvania Supreme Court's opinions which imposed the two-fold requirement of same subject matter and integration.

■ Furthermore, the precedential value of *Heritage* on this point is questionable in light of a subsequent Superior Court decision. In *Eigen v. Textron Lycoming Reciprocating Engine Div.,* 874 A.2d 1179, 1184–85 (Pa.Super.Ct.2005), a case decided three years after *Heritage,* the Superior Court allowed proof of a claim for fraudulent inducement where the written settlement agreement did not specifically address the subject matter of the fraudulent representation. *Eigen,* 874 A.2d at 1191 (holding that the defendant presented a sufficient showing of fraud in the inducement to merit an evidentiary hearing where the plaintiff withheld information concerning the existence of an insurance policy and thereby induced the defendant to enter into an unfavorable settlement agreement). In any event, even if *Heritage* accurately stated Pennsylvania

---

**9.** The Pennsylvania Commonwealth Court hears original civil cases brought by and against the Commonwealth and appeals from decisions by state agencies and from the Courts of Common Pleas involving the Commonwealth and local agencies. Appeals from decisions of the Commonwealth Court are heard by the Pennsylvania Supreme Court. *See* http://www.courts.state.pa.us/Index/UJS/brochure2.asp.

law, it would only apply to those cases in which the written agreement is integrated.

In this case, the alleged promises with respect to neutral references for Wall are collateral to the agreement. The agreement does not explicitly or implicitly purport to be integrated, *i.e.,* it does not contain a merger clause, and it is not so comprehensive as to cover every aspect of the parties' agreement. Significantly, the terms of the agreement say nothing about Conrail providing Wall with future references.

Yet, the Magistrate Judge pointed to three parts of the settlement agreement to conclude that the contract was, nevertheless, integrated:

1) The introductory paragraph states: "[t]he following constitutes the settlement agreement and release involving a dispute originated by Conrail Engineer D.E. Wall."

2) The terms of the agreement are listed below the heading "The conditions agreed upon by the [UTU] as Wall's authorized representative and Conrail's representative at PLB 6019 are as follows:"

3) Above the signature line, the agreement states: "If the conditions contained above accurately reflect the understanding reached by the parties, please sign in the space provided below."

Report at 33.

Although these features of the agreement are surely comprehensive enough to extinguish any retaliation claim Wall had against Conrail, they do not purport to resolve ancillary issues of how Conrail will act in the future. Nor do they purport to foreclose the possibility that the parties have made additional agreements regarding other subject matter, *i.e.,* they do not claim that the settlement agreement represents the parties' entire agreement.

Neither the Magistrate Judge, nor the District Court, nor the defendants cited any Pennsylvania case where an agreement without an integration clause precluded a plaintiff from bringing a suit for fraudulent inducement. The Magistrate Judge and the District Court concluded that Wall's claim would add to the terms of the contract, but, as the agreement does not purport to be complete and fully integrated, there is nothing wrong with adding to it.

> Thus, in a case of fraud in the inducement, parol evidence is inadmissible where the contract contains terms that deny the existence of representations regarding the subject matter of the alleged fraud. But when the contract contains no such term denying the existence of representations, parol evidence is admissible to show fraud in the inducement.

*Youndt v. First Nat'l Bank of Allegany,* 868 A.2d 539, 546 (Pa.Super.Ct.2005). The written settlement agreement here is not fully integrated and does not deny the existence of representations concerning Conrail giving Wall neutral job references.

### ii. The decisions below

As noted above, some confusion has surrounded the application of the Pennsylvania parol evidence rule in fraudulent inducement cases. *Compare, e.g., Youndt,* 868 A.2d at 546 (noting that parol evidence is admissible to prove fraudulent inducement as long as the written agreement does not specifically disclaim the alleged misrepresentation) *with Greylock Arms,* 879 A.2d at 868 (barring evidence of fraudulent inducement where the written agreement was fully integrated). In more than one instance, federal district courts in particular have looked only to the second of the Pennsylvania Supreme Court's two prerequisites for application of the parol evidence rule—that the written agreement

be fully integrated—and ignored the first condition—that the subject matter of the alleged misrepresentation be specifically addressed in the written agreement.

Following the lead of such cases, the Magistrate Judge here applied the parol evidence rule to hold that Wall was barred from asserting a fraudulent inducement claim based on oral misrepresentations preceding a written agreement, going so far as to suggest that the entire theory of fraudulent inducement is barred under Pennsylvania law where the written agreement is integrated. Report at 30 ("In simple terms, the Pennsylvania courts have held that the parol evidence rule bars a claim for fraudulent inducement based on oral false representations that preceded the signing of an integrated written agreement."). In particular, the Magistrate Judge, having erroneously found the written agreement to be integrated, then rejected Wall's arguments that the Pennsylvania parol evidence rule would not be applicable because the prior oral representation did not concern a subject addressed in the written agreement.

Wall also argues that the Magistrate Judge misconstrued Pennsylvania law by relying on federal court readings of Pennsylvania law, primarily *Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*, 94 F.Supp.2d 589, 592 (E.D.Pa.1999), rather than on primary sources, and that his claim would not be barred by Pennsylvania law. Wall is correct. Indeed, *Coram's* declaration that "[i]n Pennsylvania, it is now settled that the parol evidence rule bars claims of fraud in the inducement and only allows claims of fraud in the execution" overstates the reach of the parol evidence rule in Pennsylvania by failing to note that the rule only applies where the alleged misrepresentations concern a subject which is specifically dealt with in the written agreement, and particularly where the written agreement is fully integrated—two conditions that were, incidentally, present in the facts of *Coram*. See *supra*, n. 6. The prior oral representations in the case before us were not addressed in the written settlement agreement and the written settlement agreement was not integrated. The prior oral representations are, therefore, outside the scope of the parol evidence rule and evidence of these collateral oral representations should have been taken into account when evaluating the viability of Wall's complaint.

Moreover, an examination of Pennsylvania cases bears out Wall's assertion and shows Pennsylvania to be more open to fraudulent inducement claims than the Magistrate Judge indicated in his reliance on *Coram*, when he suggested that the entire theory was barred under Pennsylvania law where the written agreement is integrated—regardless of whether the agreement refers to the subject that is now at the heart of the dispute or has an explicit integration clause. For example, in *Martin v. Hale Products, Inc.*, 699 A.2d 1283 (Pa.Super.Ct.1997), the Superior Court reversed the dismissal of an employee's action where she had taken the job on the basis of a misrepresentation that the company was not the subject of a takeover. That court sustained the claim on the theory of fraud in the inducement and specifically rejected as binding authority a number of federal cases relied upon by the appellee in that case, without mentioning which federal cases had been cited. While *Martin* is distinguishable on the ground that the only "contract" involved was an employment letter, the case does indicate that Pennsylvania has not only upheld claims for fraud in the inducement, but has done so in the context of claims by employees against employers who misrepresent the employee's situation.

Furthermore, a more recent Pennsylvania Superior Court case held that a signatory to a settlement agreement procured by fraud could recover, and moreover, could choose to either rescind the agreement or affirm the settlement and sue for damages. *Eigen*, 874 A.2d at 1184–85. Thus, it is clear that Pennsylvania law does provide a cause of action for fraudulent inducement to enter a contract.

Regarding application of the parol evidence rule in Pennsylvania, the Magistrate Judge ruled that Wall could not sue even though the written settlement contract did not contain an integration clause. In response to plaintiff's objection to its reliance on federal district court cases, the Magistrate Judge, again relying on two federal district court cases, stated that "the parol evidence rule sweeps more broadly, however, and bars reliance on oral statements if they 'would add to, modify or vary the terms of the agreement.'" Report at 32 (quoting *Straight Arrow Prods. v. Conversion Concepts, Inc.*, No. 01–221, 2001 WL 1530637, at *5 (E.D.Pa. Dec.3, 2001); *Stamford, Inc. v. The Color Works, Inc.*, No. 94–6278, 1996 WL 557328, at *2 (E.D.Pa. Sept.30, 1996)). As discussed above, this, too, is not a correct reading of the Pennsylvania cases, because it ignores the first condition for application of the parol evidence rule as set forth by the Pennsylvania Supreme Court—that the subject matter of the alleged misrepresen-

tation be specifically addressed in the written agreement—and wrongly concludes that the settlement agreement here was integrated.[10]

In sum, Wall's claim for fraudulent inducement is viable under Pennsylvania law because the written settlement agreement made no mention of Conrail's obligations regarding future job references and because it was not fully integrated. Even if the Magistrate Judge had been correct in concluding that the written agreement was integrated, it is not clear that Pennsylvania law would bar the fraudulent inducement claim because the subject matter of the alleged representations regarding future job references was not addressed in the settlement agreement.

### c. Conflicts analysis

There is, therefore, no conflict between New York and Pennsylvania case law for this case, in which the fraudulent inducement claim is premised on representations that were made prior to the parties entering a non-integrated written agreement that does not contradict the representations. As there is no conflict, for practical reasons, that is, for ease of administrating the case, New York, as the forum state, would apply its law. *See Excess Ins. Co. Ltd. v. Factory Mutual Ins. Co.*, 2 A.D.3d 150, 151, 769 N.Y.S.2d 487, 489 (1st Dep't 2003) ("If no conflict exists, then the court should apply the law of the

10. Aside from the two Pennsylvania intermediate appellate court cases discussed above, there has been a series of recent federal district court cases which appear to have dispensed with the requirement that the written agreement deal with the same subject matter as the alleged misrepresentations and to have barred parol evidence of fraudulent inducement where the written agreements are merely integrated. *See, e.g., Audiotext Int'l, Ltd. v. Sprint Comms. Co., Inc.*, No. 03–2110, 2006 WL 1490129, at *5 (E.D.Pa. May 26, 2006); *Freedom Medical, Inc. v. Royal Bank of Cana-* *da*, No. 04–cv–5626, 2005 WL 3597709, at *5 (E.D.Pa. Dec.30, 2005); *Straight Arrow Prods. v. Conversion Concepts, Inc.*, No. 01–221, 2001 WL 1530637, at *5–6 (E.D.Pa. Dec.3, 2001); *Winters v. The Investment Savings Plan for Employees of Knight–Ridder, Inc.*, 174 F.Supp.2d 259, 263 (E.D.Pa.2001). Even if these cases accurately state Pennsylvania law, they would not apply to the facts of this case, in which the written agreement was neither integrated nor concerned with the same subject matter as the alleged misrepresentation.

forum state in which the action is being heard.").

## (2)

## Preemption

 The Magistrate Judge rejected defendants' argument that Wall's fraudulent inducement claim is preempted by the Federal Rail Safety Act ("FRSA"). The district court did not reach the issue of preemption. We agree with the Magistrate Judge's conclusion for substantially the same reasons. The FRSA, 49 U.S.C. § 20109(c), provides that retaliation complaints must be resolved by special arbitration proceedings. *See id.* ("A dispute, grievance or claim arising under [the FRSA] is subject to resolution under section 3 of the Railway Labor Act (45 U.S.C. § 153)"). The defendants argue that, although Wall describes claim as a "fraudulent inducement" tort, it is actually an "artfully pleaded" complaint [11] that in substance alleges retaliation on the basis of his previous complaints against the railroad.

At this stage of the case, defendants' preemption argument has little merit. Defendants rely heavily on *Rayner v. Smirl*, 873 F.2d 60 (4th Cir.1989), in which the Fourth Circuit held that the FRSA preempted a state suit for wrongful discharge. The court reasoned that:

Congress' desire for national uniformity in railroad safety practices clearly is implicated by Rayner's common law claims. In one sense, of course, all the trier of fact need do in a wrongful discharge action is determine the reason for the discharge. In another sense, however, Rayner's claim of wrongful discharge for 'whistleblowing' is inextricably tied to the question of precisely what railroad safety practices he was blowing the whistle on. To the extent that the justifiable nature of the whistleblowing enters the calculus in wrongful discharge actions, railroad safety laws might be subject to an unpredictable medley of jury determinations, which Congress, in its quest for national uniformity under § 434, sought to avoid. *Id.* at 66; *see also Peters v. Union Pac. R.R. Co.*, 80 F.3d 257 (8th Cir.1996) (finding that the FRSA preempts plaintiff's attempt to recover an engineer certification card through a state claim for conversion because his claim seeks "not merely the return of his certification card, but what the certification card represents.").

But there is nothing in Wall's fraudulent inducement suit which would necessarily require the court to address a question of railway safety. Unlike in *Rayner*, his fraudulent inducement claim does not turn on whether or not his initial whistle-blowing was justified. The defendants argue that Wall has sought discovery relating to

---

**11.** In raising the question of an "artfully pleaded" complaint, defendants appear to confuse important differences between "ordinary preemption" and "complete preemption." "Under the complete preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming with the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted." *Sullivan v. Am. Airlines*, 424 F.3d 267, 272 (2d Cir.2005). "The Supreme Court has only found three stat-

utes"—the Labor Management Relations Act, the Employee Retirement Income Security Act and the National Bank Act—"to have the requisite extraordinary preemptive force to support complete preemption." *Id.* In such cases the artful-pleading doctrine ensures that even though the plaintiff styles his complaint as a state law claim, the court will construe the claim as arising under federal law. *See id.* at 271–72. There is no support for the proposition that the FRSA effected a similar "complete preemption" transforming all state law claims in the area into federal ones.

Conrail employees' retaliatory actions that took place before the signing of the settlement agreement in order to prove that their promises to provide him with references were made as part of a retaliatory scheme. They state that "[a]ccordingly, Plaintiff must prove before the District Court that Conrail retaliated against him for making safety complaints, and intended to continue retaliating against him because of his safety complaints at the time the settlement agreement was being negotiated and afterwards." But Wall is using evidence of past retaliation, not as an element of his tort suit, but simply to prove motive for the defendants' fraudulent statements. Cf. Fed.R.Evid. 404(b) (prior acts may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident"). Wall's case does not depend on whether or not Conrail's pre-settlement actions were retaliatory or whether his whistle-blowing actions were justified. The district court in this action must determine only whether the defendants promised to provide neutral references without intending to honor that promise.

On the other hand, if Wall succeeds on his fraudulent inducement claim, but seeks rescission as a remedy, then he would in theory be asking that he be restored to the position he was in before withdrawing his retaliation claim. There is a much stronger argument that such a remedy would embroil the court in questions of whistle-blowing and railway safety, which the FRSA preempts in favor of arbitration. This is, however, an issue that can be resolved if and when it arises.

## Conclusion

Because we hold that Wall has stated a viable claim for fraudulent inducement under both New York and Pennsylvania law, and that his claim as presently presented is not preempted, we vacate the district court's decision dismissing his fraud in the inducement claim and remand to the district court for further proceedings.