Thomas "Snuff" **GARRETT, individually and d/b/a Garrett Music Enterprises, Plaintiffs,**

v.

**MUSIC PUBLISHING COMPANY OF AMERICA, LLC, Defendant.**

No.  09 Civ. 5627(VM).

United States District Court, S.D. New York.

Aug. 17, 2010.

David Nathan Tarlow, Coggan & Tarlow, New York, NY, for Plaintiff.

Michael Barrie Kramer, Rubin Jay Ginsberg, Michael B. Kramer & Associates, New York, NY, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Thomas "Snuff" Garrett ("Garrett"), individually and doing business as Garrett Music Enterprises, brought this action against defendant Music Publishing Company of America, LLC ("MPCA"), alleging breach of contract and fraud and claiming damages of $312,717. The parties now bring cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). For the reasons discussed below, Garrett's motion is DENIED and MPCA's motion is GRANTED in part and DENIED in part.

### I. BACKGROUND [1]

The parties entered into a letter of intent dated December 18, 2007 (the "Letter of Intent") in which MPCA agreed to pay Garrett a total of $856,360 for Garrett's music publishing catalog (the "Catalog") "based on an average annual [Net Publisher's Share] over the prior three (3) years of $107,295" multiplied by a factor of eight. (Exhibits in Support of Defendant's Motion for Summary Judgment, dated April 22, 2010, Ex. C.) Upon MPCA's discovery of possible chain-of-title complications with a song in the Catalog—"Half Breed"—the parties drafted an Asset Acquisition Agreement, dated September 17, 2008 (the "Asset Acquisition Agreement"), outlining new conditions of the sale of the Catalog to MPCA. The Asset Acquisition Agreement stated that MPCA would pay Garrett $544,243 (the "Purchase Price") for the entire Catalog excluding "Half Breed," but that MPCA would be obligated to purchase "Half Breed" for $312,717 (the "Additional Price") in the event that Garrett was able to obtain an assignment of the reversionary interest in "Half Breed" from each of the songwriter's heirs (the "Assignments") "within thirty (30) days of the execution" of the Asset Acquisition Agreement. (Declaration of David N. Tarlow, dated March 29, 2010 ("Tarlow Decl."), Ex. G § 2.3A.)

---

1. The factual recitation set forth below is drawn from the following documents, and any exhibits and declarations submitted therewith: Memorandum of Law in Support of Defendant's Motion for Summary Judgment, dated March 25, 2010; Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment as to Plaintiff's First Claim, dated March 26, 2010; Plaintiff's Statement of Material Facts of Which There are no Genuine Issues to be Tried, dated March 26, 2010; Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Further Support of Defendant's Motion for Summary Judgment, dated April 22, 2010; Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated April 22, 2010.

The Asset Acquisition Agreement provided that the closing would "take place at a mutually agreed location on September 30, 2008, at 10:00 o'clock a.m. or such other time as Buyer and Seller may mutually agree upon." (*Id.* Ex. G § 3.1.) The closing did not occur on September 30, 2008, but neither party specified an alternate date. Garrett signed the Asset Acquisition Agreement on September 26, 2008 and MPCA signed on November 5, 2008. MPCA paid Garrett the Purchase Price on November 12, 2008.

On November 12, 2008 and December 5, 2008, Garrett's attorney requested an extension of time in which to obtain the Assignments. After the first request, MPCA's attorney replied in an email dated November 13, 2008, "if you need an extension . . . let's discuss it closer to the time." (*Id.* Ex. K.) In response to Garrett's attorney's second request for an extension, MPCA's attorney stated in an email dated December 5, 2008: "I'm sure it's fine. I'll deal with it on Monday." (*Id.* Ex. L.) Garrett's attorney then sent an email to MPCA's attorney on December 10, 2008, indicating that the Assignments would be delivered by Friday, December 12, 2008. MPCA's attorney responded, "Please [e-mail] or fax the agreements to us on Friday. Thanks." (*Id.* Ex. M.)

Garrett's attorney sent the Assignments to MPCA's attorney on December 12, 2008 by email and Federal Express. Another attorney representing MPCA emailed Garrett's attorney later that day indicating receipt of the emailed version of the Assignments but noting that their production was outside the thirty-day period required by the Asset Acquisition Agreement. MPCA declined to pay the Additional Price for the rights to "Half Breed." Garrett then brought the instant action against MPCA, alleging breach of contract,

breach of the covenant of good faith and fair dealing, and common law fraud. Both parties now move for summary judgment.

## II. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994). When deciding cross-motions for summary judgment, the standard to be applied "is the same as that for individual summary judgment motions and a court must consider each motion independent of the other." *Schultz v. Stoner,* 308 F.Supp.2d 289, 298 (S.D.N.Y.2004) (quotation marks omitted).

In a contract dispute, a motion for summary judgment may be granted "if the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *Topps Co. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir.2008) (quotation marks omitted).

## III. DISCUSSION[2]

### A. BREACH OF CONTRACT

Garrett asserts that MPCA breached the Asset Acquisition Agreement by delaying Garrett's production of the Assignments and then failing to pay the Additional Price after Garrett delivered the Assignments within thirty days of MPCA's payment of the Purchase Price. MPCA argues that it did not breach the Asset Acquisition Agreement because it was required to pay the Additional Price to Garrett only if Garrett procured the Assignments within thirty days of MPCA's signing of the Asset Acquisition Agreement. The Court agrees with MPCA and is persuaded that, as a matter of law, the Asset Acquisition Agreement required Garrett to obtain the Assignments within thirty days of MPCA's signing of the Asset Acquisition Agreement on November 5, 2010. However, the Court denies MPCA's motion for summary judgment on Garrett's breach of contract claim in part because there exist material issues of fact relevant to a determination of whether MPCA should be equitably estopped from asserting that Garrett's production of the Assignments was untimely. Because of these outstanding issues, the Court also denies Garrett's motion for summary judgment on his breach of contract claim.

#### 1. Interpretation of "Execution"

MPCA argues that the term "execution" as used in the Asset Acquisition Agreement refers to the date that both parties had signed the contract, November 5, 2008. Garrett disputes this interpretation, and claims that, as a matter of law, execution refers to November 12, 2008, the date that MPCA performed as required by the Asset Acquisition Agreement. The Court agrees with MPCA.

▆▆▆ The "initial question for the court on a motion for summary judgment with respect to a contract claim is whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir.2010) (quotations marks omitted). Whether a contract is ambiguous is a matter of law for the court. *See id.* An ambiguity exists when the terms used in the contract "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* at 466 (quotation marks omitted). In contrast, "[n]o ambiguity exists where the contract language has a definite and precise meaning ... and concerning which there is no reasonable basis for a difference of opinion." *Id.* at 467 (quotation marks omitted). Thus, "the court should not find the contract ambiguous where the interpretation urged by one party would strain [ ] the contract language beyond its reasonable and ordinary meaning." *Id.* (alteration in original) (quotation marks omitted).

---

**2.** Garrett argues that the Court should dismiss MPCA's motion for failure to annex a statement of material facts pursuant to Local Civil Rule 56.1. However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir.2001). The Court will consider MPCA's summary judgment motion despite its failure to submit a statement of undisputed material facts pursuant to Local Civil Rule 56.1 because the Court finds that the noncompliance is not material to the Court's analysis of the dispute or to the outcome.

Section 2.3A of the Asset Acquisition Agreement ("Section 2.3A") states, "[i]f within thirty (30) days of the *execution* of this Agreement, Seller provides Buyer with an executed copy of this assignment for 'Half Breed' ... Seller shall sell and Buyer shall be obligated to purchase 'Half Breed' for an additional payment in the amount of Three Hundred Twelve Thousand Seven Hundred Seventeen Dollars." (Tarlow Decl. Ex. G. § 2.3A (emphasis added).)

■ The Court finds Section 2.3A unambiguous. The plain meaning of the word execution, as Garrett himself asserts, is "[v]alidation of a written instrument, such as a contract or will, by fulfilling the necessary legal requirements." *Black's Law Dictionary* (8th ed.2004). The use of "execution" in Section 2.3A comports with this definition, as it concerns the date on which the parties were to sign the Asset Acquisition Agreement, formalizing their acceptance of the contract, marking the commencement of the parties' legal relationship and a reference point by which the performance of certain of their contractual obligations would be determined.

The Court is not persuaded by Garrett's interpretation of the execution date as referring to the date of MPCA's payment of the Purchase Price. Garrett's interpretation strains the language of the contract beyond its reasonable meaning. Payment is contemplated by the Asset Acquisition Agreement not as an element of execution, which as the contract is formulated clearly reflects a condition precedent to payment, but as necessary to the scheduled closing of the contract, which just as unambiguously is provided as a future condition to follow on the specified date after execution. For example, the Asset Acquisition Agreement explicitly references the closing date and the items to be delivered by both parties at closing, including payment

on the part of MPCA (*see* Tarlow Decl. Ex. G, at Art. IX), and the Asset Acquisition Agreement defines closing as the "consummation of the transactions" as provided. (*Id.* Ex. G § 3.1.)

Further, the Asset Acquisition Agreement states that parties "shall *execute* such documents as required by this Agreement to be executed" (*id.* Ex. G § 9.1 (emphasis added)), and that Garrett should provide MPCA "with an *executed* copy of the Assignment for 'Half Breed.'" (*Id.* Ex. G § 2.3A (emphasis added).) There can be no reasonable good faith dispute that the plain meaning of "execute" in these usages refers to the formal signing of the Asset Acquisition Agreement to signify acceptance of its terms. Indeed, Garrett's own attorney clearly interpreted and understood Section 2.3A as requiring him to provide signed copies of the Assignments. This reading is indicated by letter dated December 12, 2008, in which Garrett's attorney stated that he had delivered "two (2) fully executed" copies as required. (*Id.* Ex. 0.)

Further, to the extent that Garrett argues that MPCA's performance was necessary to execute the Asset Acquisition Agreement, he "ignores the difference under New York law between a condition that must occur before a party's performance under an existing contract becomes due and a condition to the formation of the contract itself." *SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 341 (2d Cir.2004) (quotation marks omitted). In cases where an express condition precedent to contract formation is found in the contract, parties typically use language making this intent clear, such as stating that the contract will be null and void unless and until the condition is fulfilled. *See Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 636 N.Y.S.2d 734, 660 N.E.2d 415, 418

(1995). Additionally, "[i]n determining whether a particular agreement makes an event a condition courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition [precedent]." *Id.* There is no indication in the Asset Acquisition Agreement that payment of the Purchase Price was a condition to contract formation here, and the Court will not read such language into the contract.

### 2. *Implied Covenant of Good Faith and Fair Dealing*

■■ The Court also finds no merit in Garrett's argument that MPCA breached the contract by deliberately delaying Garrett's production of the Assignments. It is true that a delay in performing a contract may amount to a breach of the implied covenant of good faith and fair dealing implicit in every contract. *See DiBlanda v. ADC Pinebrook, LLC,* 44 A.D.3d 702, 843 N.Y.S.2d 429, 429 (2d Dep't 2007). But MPCA was not bound by the Asset Acquisition Agreement until it actually signed the contract on November 5, 2008. There can be no breach of contract, or the implied covenant of good faith and fair dealing, without a governing valid contract.

■ To the extent Garrett alleges breach based on events after November 5, 2008, Garrett points to no facts that would support a finding that MPCA acted in bad faith to delay Garrett's performance. The implied covenant of good faith and fair dealing does not impose an affirmative duty to assist a contracting party in performing its obligations under the contract. *See Broder v. Cablevision Sys. Corp.,* 418

F.3d 187, 198 (2d Cir.2005) (holding that the implied covenant of good faith and fair dealing did not "transform an obligation to refrain from changing the customer's rates except in accordance with applicable law into an affirmative obligation to change his rates."). Garrett asserts that MPCA knew that he was going to take at least thirty days to obtain the Assignments—but MPCA was simply under no obligation to give MPCA an extension or to help him procure the Assignments. In other words, because Garrett is unable to prove an actual breach of the Asset Acquisition Agreement, he is also unable to prove breach of the implied covenants of good faith and fair dealing. *See Ezrasons, Inc. v. American Credit Indem. Co.,* 257 A.D.2d 447, 683 N.Y.S.2d 264, 266 (1st Dep't 1999) (dismissing claim of breach of implied covenant of good faith and fair dealing where plaintiff alleged no violation of rights under the contract).

### 3. *Equitable Estoppel*

■ Garrett argues that MPCA should be estopped from asserting the thirty-day limitation imposed by Section 2.3A.[3] It is Garrett's position that MPCA should be prevented from enforcing this contractual deadline against Garrett because it led Garrett to believe that the thirty-day due date had been waived. The Court finds that the parties present triable issues of fact as to the application of the doctrine of equitable estoppel.

■ The doctrine of equitable estoppel can be raised "where the enforcement of the rights of one party would work an injustice upon the other party due to

---

**3.** Although Garrett raises the doctrine of equitable estoppel here for the first time, the Court considers the argument because it has been put forth to respond to MPCA's defense that Garrett failed to perform as required under the Asset Acquisition Agreement. *See*

*Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.,* 47 A.D.3d 239, 847 N.Y.S.2d 49, 53 (1st Dept.2007) ("[T]here is no requirement that a complaint anticipate and overcome every defense that might be raised in opposition to a cause of action.").

the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 725 (2d Cir.2001). "[E]quitable estoppel is a principle or an affirmative defense that serves to stop another party from denying a material fact." *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 301 (2d Cir.1996). To prevail on this theory, a party must show that an adverse party (1) engaged in conduct which amounts to a false representation or concealment of material facts; (2) intended that such conduct would be acted upon; and (3) knew the real facts. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 607 (2d Cir.2005). A party must also show that it (1) lacked knowledge of the true facts; (2) relied upon the adverse party's conduct; and (3) prejudicially changed its position. *See id.*

Garrett identifies several email exchanges between MPCA's attorney and Garrett's attorney that relate to a possible extension of the thirty-day time period. In response to Garrett's attorney's question about the deadline for the Assignments, MPCA's attorney states on November 13, 2009: The due date is "30 days from execution. You can use the date that I sent the fully-executed agreements to you and go from there. If you need an extension beyond this date, let's discuss it closer to the time." (Tarlow Decl. Ex. K.) On December 5, 2008, Garrett's attorney again emailed MPCA seeking an extension. MPCA's attorney responded "leaving the office now but I'm sure it's fine. I'll deal with it on Monday." (*Id.* Ex. L.) Finally, when Garrett's attorney emailed MPCA's attorney the following week, indicating that the Assignments were almost ready, MPCA's attorney responded, "Please Pdf or fax the agreements to us on Friday [December 12, 2008]. Thanks." (*Id.* Ex. M.) But when Garrett's attorney sent the Assignments as directed, a different MPCA attorney responded, "For the record, this was received by us outside of the thirty-day period provided for in paragraph 2.3A of the Asset Acquisition Agreement, by any interpretation of that provision." (*Id.* Ex. P.)

Application of equitable estoppel is generally an issue of fact, and this case is no exception. *See Kosakow,* 274 F.3d at 725. Garrett presents facts that could support both the inference that MPCA misrepresented its flexibility as to the thirty-day provision with the intention that Garrett delay production of the Assignments, as well as knowledge that MPCA would then refuse to perform because of Garrett's failure to comply with the Asset Acquisition Agreements. But the intent behind MPCA's emails, as well as MPCA's knowledge of the true facts of the approaching deadline constitute disputed issues of material fact. Similarly, there are issues of fact as to whether Garrett knew that MPCA did not actually waive the impending thirty-day deadline, and whether Garrett reasonably—and actually—relied on MPCA's representations when he performed after the required date. None of these factual disputes may be resolved by the Court at this time. Accordingly, the Court denies both parties' motions for summary judgment in part and grants MPCA's motion in part.

## B. *COMMON LAW FRAUD CLAIM*

■ Garrett asserts that MPCA acted fraudulently in that it never intended to purchase "Half Breed" and that it intentionally bifurcated the original agreement as outlined in the Letter of Intent in order to pay a reduced price for Garrett's musical compositions without "Half Breed." MPCA argues that Garrett's fraud claim is nothing more than his breach of contract claim in disguise. The Court agrees.

■ "As a general matter, a fraud claim may not be used as a means of

restating what is, in substance, a claim for breach of contract. Thus, general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir.2006) (quotation marks omitted) (alteration in original). However, "New York law specifically recognizes causes of action for fraud in the inducement [of a contract] when the misrepresentation is collateral to the contract it induced." *Id.* Here, Garrett fails to allege a collateral misrepresentation. MPCA's alleged fraudulent misrepresentation—that it would perform under the contract as promised—goes to the heart of the contract itself and is insufficient to support a fraud claim. Garrett's fraud claim is "in substance, a claim for breach of contract," *id.*, and it must be dismissed as a matter of law. Thus, the Court grants MPCA's motion for summary judgment to dismiss Garrett's fraud claim.

## IV. *ORDER*

Accordingly, it is hereby.

**ORDERED** that the motion for summary judgment of plaintiff Thomas "Snuff" Garrett, individually and d/b/a Garrett Music Enterprises (Docket No. 12) herein is DENIED; and it is further.

**ORDERED** that the motion for summary judgment of defendant Music Publication Company of America, LLC (Docket No. 18) herein is GRANTED in part and DENIED in part; and it is finally.

**ORDERED** that a conference is scheduled on September 24, 2010 at 4:45 p.m. to discuss preparations for trial of the remaining disputes.

**SO ORDERED.**